974 A.2d 466

NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF–RESPONDENT, v. A.P., DEFENDANT–APPELLANT, AND F.H., DEFENDANT.

IN THE MATTER OF S.H., A MINOR.

Superior Court of New Jersey
Appellate Division

Argued May 19, 2009—Decided July 17, 2009.

Before Judges SKILLMAN, GRAVES and GRALL.

*Beatrix W. Shear,* Deputy Public Defender, and *Ronald C. Appleby,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Shear and Mr. Appleby,* on the brief).

*Lauren Carlton,* Assistant Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General, attorney; *Lewis A. Scheindlin and Melissa H. Raksa,* Assistant Attorneys General, of counsel; *Jennifer Jaremback,* Deputy Attorney General, on the briefs).

*Melissa R. Vance,* Assistant Deputy Public Defender, argued the cause for minor S.H. (*Yvonne Smith Segars,* Public Defender, Law Guardian, attorney; *Ms. Vance,* on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The dispositive issue presented by this appeal is whether a parent's appeal of an order that dismisses a Title 9 action brought by the Division of Youth and Family Services (DYFS) before there has been an adjudication of abuse or neglect and entry of a final order of disposition is mooted by DYFS' filing of a Title 30 action for the termination of parental rights. We conclude that DYFS' filing of a Title 30 action and the entry in that action of an order regarding custody and related matters such as visitation, which supersedes any orders entered in the Title 9 action, moots the parent's appeal from the dismissal of the Title 9 action before an adjudication of abuse or neglect.

On December 18, 2002, DYFS filed this action under Title 9, which alleged that defendants A.P. and a paramour, J.B., had abused or neglected their child, K.B., who was born on April 18, 2002. On December 18, 2002, the trial court placed K.B. under the care, custody and supervision of DYFS.

On August 25, 2005, DYFS filed an amended complaint, which alleged that defendants A.P. and her husband, F.H., had abused or neglected their child, S.H., who was born on June 23, 2004, and sought custody of that child. The basis for this amended complaint was an incident of domestic violence between A.P. and F.H. that occurred on August 22, 2005, which resulted in the arrest of both parents. The amended complaint incorporated by reference the original complaint relating to K.B., who was still under DYFS' care, custody and supervision. On August 25, 2005, the trial court entered an order that also placed S.H. under the care, custody and supervision of DYFS, and DYFS placed S.H. in the physical custody of his paternal grandmother.

On September 15, 2005, the trial court entered another order continuing the placement of both K.B. and S.H. in DYFS' care, custody and supervision, with S.H. continuing in the physical custody of his paternal grandmother. This order provided that both parents would be entitled to supervised visitation and various

services, including anger management and parenting skills training.

Compliance review hearings were conducted on November 10, 2005, February 16, 2006, April 27, 2006, September 5, 2006, December 7, 2006, January 30, 2007, March 27, 2007, and June 19, 2007, which resulted in the continuation of S.H.'s placement under DYFS' care, custody and supervision and physical custody remaining with his paternal grandmother.

On January 23, 2006, DYFS brought a guardianship action under Title 30 seeking the termination of A.P.'s and J.B.'s parental rights with respect to K.B. When that guardianship action was filed, DYFS' original complaint against A.P. and J.B., which alleged that they had abused or neglected K.B., was dismissed. A.P. and J.B. both failed to appear for the trial of the guardianship action, which resulted in a default being entered, and on September 18, 2006, a judgment was entered terminating their parental rights with respect to K.B. No appeal was taken from this judgment.

On September 19, 2007, the trial court conducted a permanency hearing in DYFS' Title 9 action against A.P. and F.H. regarding their alleged abuse or neglect of S.H. A DYFS manager and A.P. both testified. F.H. did not appear. Following the hearing, the trial court entered an order, which found that it was "appropriate and acceptable" for DYFS to file a complaint for the termination of A.P.'s and F.H.'s parental rights.

On January 14, 2008, DYFS filed a complaint under Title 30 seeking the termination of A.P.'s and F.H.'s parental rights with respect to S.H. The complaint asserted that "it would be in [S.H.'s] best interest . . . if he was placed under the guardianship of [DYFS] for all purposes, including adoption." The complaint also asserted that A.P. "had abandoned S.H. to the care of others and had substantially failed to perform the regular and expected functions of his care and support."

On January 29, 2008, the trial court entered an order dismissing DYFS' Title 9 abuse or neglect action. This order stated: "This litigation is terminated as the guardianship complaint was filed in this matter on January 14, 2008 .... The return date is February 22, 2008." Although the January 29, 2008 order dismissed the Title 9 action, it also provided that S.H.'s "legal custody" was "continued with DYFS" and his "physical custody" was "continued with paternal grandmother."

On March 19, 2008, A.P. filed a notice of appeal from the January 29, 2008 order dismissing the Title 9 action against her.

On February 22, 2008, the return date referred to in the order dismissing the Title 9 action, the trial court in the Title 30 guardianship action entered an order which provided, among other things, that S.H. "shall remain a ward of the court and remain in the care, custody and supervision of [DYFS]." On March 31, 2008, June 2, 2008, November 10, 2008, and December 22, 2008, the court entered further orders continuing this provision. In addition, on August 25, 2008, the trial court in the guardianship action entered a permanency order, which concluded that DYFS' "permanent plan for the ... termination of parental rights [as to S.H.] followed by adoption [is] appropriate and acceptable." This order found that "[A.P.'s] whereabouts are unknown" and that "[S.H.] has been in out-of-home placement for 3 years and is in need of permanency."

On December 22, 2008, the trial court in the guardianship action entered an order, apparently on its own motion, staying that action pending this court's disposition of the present appeal.

On her appeal from the order dismissing the Title 9 action, A.P. argued that the trial court deprived her of due process by dismissing the Title 9 action without affording her an opportunity to appear. A.P. also presented a series of arguments that rest on the underlying premise that DYFS was required to prove its case in the Title 9 abuse or neglect action before it could file a Title 30 guardianship action. She argued that the court violated the governing statutory provisions by allowing DYFS to file a Title 30

action without first finding that she had abused or neglected S.H., that the termination of her parental rights rather than reunification was the appropriate plan for S.H., or that the proposed adoptive parents were approved and interested in adoption.

Upon an initial review of this appeal, we questioned whether the January 29, 2008 order dismissing the Title 9 action was appealable or, alternatively, whether the appeal was moot, in light of DYFS' filing of the Title 30 action. Therefore, we directed the parties to file supplemental briefs addressed to this issue.

A.P. argues in her supplemental brief that this appeal is not moot because DYFS' proof of abuse or neglect in an action brought under Title 9 is a prerequisite for bringing a guardianship action under Title 30. DYFS and the Law Guardian argue that this appeal is moot because the Title 9 action was dismissed before trial and DYFS may bring a Title 30 guardianship action without proving child abuse or neglect in an action brought under Title 9.

## I.

In addressing the mootness issue, we first consider whether DYFS is required to prevail in a Title 9 abuse or neglect action before initiating an action under Title 30 for the termination of parental rights. Title 30 sets forth five separate and independent grounds for filing a guardianship petition. *N.J.S.A.* 30:4C–15 provides in pertinent part that "a petition to terminate parental rights shall be filed" by DYFS:

[w]henever

(a) it appears that a court wherein a complaint has been proffered as provided in chapter 6 of Title 9 . . . has entered a conviction against the parent or parents . . . because of abuse, abandonment, neglect of or cruelty to such child; or

. . . . [1]

(c) it appears that the best interests of any child under the care or custody of [DYFS] require that he be placed under guardianship; or

(d) it appears that a parent . . . following the acceptance of such child by [DYFS] pursuant to [*N.J.S.A.* 30:4C–11 or –12] . . . has failed for a period of one year to

---

[1] The former *N.J.S.A.* 30:4C–15(b) was repealed by *L.* 1991, *c.* 275.

remove the circumstances or conditions that led to the removal or placement of the child, although physically and financially able to do so, notwithstanding [DYFS'] reasonable efforts to assist the parent ... in remedying the conditions; or

(e) the parent has abandoned the child; or

(f) the parent of a child has been found by a criminal court of competent jurisdiction to have committed [any one of a series of enumerated violent criminal offenses against] the child or another child of the parent ... or the parent has committed a similarly serious act which resulted, or could have resulted, in the death or significant bodily injury to the child or another child of the parent

. . . .

It is thus clear on the face of *N.J.S.A.* 30:4C–15 that a finding of abuse or neglect in an action under Title 9 is only one of five statutory grounds for the termination of parental rights. Indeed, we take judicial notice of the fact that most termination of parental rights cases appealed to this court are based on *N.J.S.A.* 30:4C–15(c), which provides for termination where "the best interests of any child ... require that he be placed under guardianship." *See also N.J.S.A.* 30:4C–15.1(a) (setting forth the four statutory tests for determining whether termination is in the "best interests of the child"). Therefore, except for a guardianship action under *N.J.S.A.* 30:4C–15(a) based on a finding of abuse or neglect under Title 9,[2] DYFS may bring an action for the termination of parental rights under any of the other subsections of *N.J.S.A.* 30:4C–15 without first bringing an action under Title 9.

If there could be any doubt about the correctness of this conclusion, it was resolved by *N.J. Div. of Youth and Family Servs. v. K.M.*, 136 *N.J.* 546, 556, 643 A.2d 987 (1994), which expressly held that "termination proceedings, which are brought

---

2 We note that *N.J.S.A.* 30:4C–15(a) uses the term "conviction" of a parent for abuse, abandonment, neglect or cruelty, which ordinarily would be understood to refer to a criminal conviction rather than a judgment in a civil action, such as an action by DYFS that results in entry of a final order of disposition. However, our Supreme Court has suggested, without expressly holding, that such a civil order provides the requisite foundation for a guardianship action under *N.J.S.A.* 30:4C–15(a). *See In re Guardianship of J.N.H.*, 172 *N.J.* 440, 452, 462–63, 799 A.2d 518 (2002). Because no final order of disposition was entered in this action and DYFS is not proceeding under *N.J.S.A.* 30:4C–15(a) in the guardianship action, there is no need for us to address the issue.

pursuant to *N.J.S.A.* 30:4C–15, do not *require* a prior determination of abuse or neglect." *See also N.J. Div. of Youth & Family Servs. v. M.M.,* 189 *N.J.* 261, 292, 914 *A.*2d 1265 (2007) (noting that "[i]t is well settled that, unlike Title 9 inquiries, a parent's fitness is not the touchstone under the best-interests standard" for termination of parental rights set forth in *N.J.S.A.* 30:4C–15.1(a)).

Moreover, DYFS may obtain custody of a child in need of care and supervision in a proceeding brought under Title 30 without any prior action under Title 9. *N.J.S.A.* 30:4C–12 provides that

[i]f ... it appears that [a] child requires care and supervision by [DYFS] or other action to ensure the health and safety of the child, [DYFS] may apply to the Family Part of the Chancery Division of the Superior Court ... for an order making the child a ward of the court and placing the child under the care and supervision or custody of [DYFS].

*See N.J. Div. of Youth & Family Servs. v. J.Y.,* 352 *N.J.Super.* 245, 258–61, 800 *A.*2d 132 (App.Div.2002) (discussing "separate" authority provided by Title 9 and Title 30 for DYFS' removal of child from parent's custody). In fact, DYFS may obtain an order for custody of a child under the "best-interests standard" of *N.J.S.A.* 30:4C–12 even if DYFS failed to show abuse or neglect in an action brought under Title 9. *M.M., supra,* 189 *N.J.* at 292–93, 914 *A.*2d 1265.

Although DYFS may bring an action under Title 30 for the termination of parental rights without first establishing a parent's abuse or neglect of the child in a Title 9 action, we recognize that DYFS generally does bring a Title 9 action before initiating a Title 30 action, at least in cases where there is a realistic possibility that a child removed from the parents' home because of alleged abuse or neglect may return to the home with the assistance of DYFS' remedial services. We also recognize that such a Title 9 action is generally tried to conclusion before the Title 30 action is filed. In fact, *K.M.* is an example of such a case.

However, *K.M.* holds that DYFS is not required to try a Title 9 action to conclusion before bringing a Title 30 action for the termination of parental rights. 136 *N.J.* at 556, 643 *A.*2d 987. In reaching this conclusion, the Court observed that "[i]f DYFS

cannot bring a termination proceeding until an abuse or neglect action finally winds its way through the courts, the Legislature's goal of achieving permanency in the placement of children will be frustrated and the child will suffer." *Id.* at 559, 643 *A.2d* 987.

Although *K.M.* involved a Title 9 action that was pending on appeal when DYFS filed a Title 30 action for the termination of parental rights, *id.* at 549, 643 *A.2d* 987, its rationale is equally applicable to a case such as this, in which DYFS filed a Title 30 action for the termination of parental rights while the prior Title 9 action was still pending before the trial court. Therefore, DYFS was not required to try this Title 9 action to conclusion before filing a Title 30 action for the termination of parental rights.

Furthermore, because DYFS may bring a Title 30 action without first filing a Title 9 action, *K.M., supra,* 136 *N.J.* at 556, 643 *A.2d* 987, and the Title 30 action may "proceed independently" of the Title 9 action, *id.* at 558, 643 *A.2d* 987, DYFS had the authority to dismiss the pending Title 9 action when it decided to bring the Title 30 action. Once the Title 30 action was filed, any appropriate interim remedial measures regarding A.P. or S.H., including provisions for custody and visitation, could be entered in that action. *See, e.g., N.J.S.A.* 30:4C–11.1; *N.J.S.A.* 30:4C–11.3(c). Consequently, there was no longer any need for the continued maintenance of the Title 9 action after the Title 30 action was filed.

## II.

The further question presented by this appeal, to which the parties' supplemental briefs were addressed, is whether A.P.'s appeal from the dismissal of the Title 9 action was mooted by DYFS' filing of the Title 30 action.

"An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." *Greenfield v. N.J. Dep't of Corrs.,* 382 *N.J.Super.* 254, 257–58, 888 *A.2d* 507 (App.Div.2006) (citation omitted). Con-

sequently, if a party "still suffers from the adverse consequences to her caused by [a] proceeding," an appeal from an order in that proceeding is not moot. *Div. of Youth & Family Servs. v. G.M.*, 398 *N.J.Super.* 21, 51, 939 *A.*2d 239 (App.Div.2008), *aff'd as modified on other grounds*, 198 *N.J.* 382, 387, 968 *A.*2d 698 (2009).

In determining whether this appeal is moot, it is important to distinguish between the January 29, 2008 order dismissing DYFS' Title 9 action against A.P. without any adjudication of abuse or neglect and a final order of disposition entered under *N.J.S.A.* 9:6–8.50 through *N.J.S.A.* 9:6–8.58, which adjudicates a complaint of abuse or neglect and provides an appropriate disposition in light of that adjudication. *See G.M., supra,* 198 *N.J.* at 389–93, 968 *A.*2d 698. The Legislature has expressly provided for a right of appeal from the latter type of order. *N.J.S.A.* 9:6–8.70; *see N.J. Div. of Youth & Family Servs. v. L.A.,* 357 *N.J.Super.* 155, 164, 814 *A.*2d 656 (App.Div.2003). Moreover, a final order entered under *N.J.S.A.* 9:6–8.50 through *N.J.S.A.* 9:6–8.58 may have continuing "adverse consequences" for a parent who has been found to have abused or neglected his or her child, including the child's placement in the custody of DYFS, a relative or other suitable person, *N.J.S.A.* 9:6–8.54(a), and the inclusion of the parent's name in the DYFS Central Registry, *see N.J.S.A.* 9:6–8.11, which may prevent the parent from obtaining certain types of employment and have other adverse effects. *See N.J. Div. of Youth & Family Servs. v. D.F.,* 377 *N.J.Super.* 59, 66–67, 871 *A.*2d 699 (App.Div.2005). In addition, a finding in an action under Title 9 that a parent has abused or neglected his child may be admissible in an action under Title 30 for the termination of parental rights. *See* 2 *McCormick on Evidence* (Brown ed., 6th ed. 2006). Therefore, we do not question a parent's right to pursue an appeal from a final order of disposition after an adjudication of abuse or neglect in an action brought under Title 9.

However, DYFS' dismissal of a Title 9 action without an adjudication that the parent has abused or neglected his or her child has none of the adverse consequences of a final order of disposition

based on a finding of abuse or neglect. Such a disposition, like the dismissal of any other action by a plaintiff under *Rule* 4:37–1, "adjudicates nothing," *Malhame v. Borough of Demarest,* 174 *N.J.Super.* 28, 30, 415 *A.*2d 358 (App.Div.1980) (quoting *Christiansen v. Christiansen,* 46 *N.J.Super.* 101, 109, 134 *A.*2d 14 (App. Div.), *certif. denied,* 25 *N.J.* 56, 134 *A.*2d 833 (1957)), and thus cannot provide a predicate for relief against the defendant. Moreover, the voluntary dismissal of an action "leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought, thus vitiating and annulling all prior proceedings and orders in the case." *A.B. Dick Co. v. Marr,* 197 *F.*2d 498, 502 (2d Cir.), *cert. denied,* 344 *U.S.* 878, 73 *S.Ct.* 169, 97 *L.Ed.* 680 (1952); *accord Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers,* 915 *F.*2d 43, 48 (1st Cir. 1990).

We recognize that the January 29, 2008 order dismissing the Title 9 action did not simply dismiss that action, but also provided for the continuation of legal custody of S.H. with DYFS and physical custody with his paternal grandmother. In this respect, it was not a true order of dismissal. The trial court undoubtedly included this provision in the January 29, 2008 order because the court in the Title 30 action had not yet exercised jurisdiction regarding custody and related matters such as visitation. In our view, the preferable procedure would have been for the court to defer dismissal of the Title 9 action until the court exercised jurisdiction over custody and related matters in the Title 30 action, which would have left the prior custody orders in the Title 9 action in effect during this short interim period.

In any event, the trial court entered an order regarding custody in the Title 30 action on February 22, 2008, which superseded the parts of the January 29, 2008 order dealing with custody. Consequently, the sole operative effect of the January 29, 2008 order since the entry of the February 22, 2008 order in the Title 30 action is the dismissal of the Title 9 action and the resulting annulment of the interlocutory orders entered in that action.

Therefore, those orders "can have no practical effect on the existing [Title 30 action]" against A.P., which renders this appeal moot. *Greenfield, supra,* 382 *N.J.Super.* at 257–58, 888 *A.*2d 507.

In concluding that this appeal is moot because the orders entered in the Title 9 action have no continuing adverse consequences, we emphasize that A.P.'s due process rights will be fully protected by the trial of the Title 30 action, which will afford her the opportunity, under the criteria set forth in *N.J.S.A.* 30:4C–15.1(a), to contest the charges of abuse or neglect or other harm to the child caused by the parental relationship, A.P.'s willingness and ability to address the causes of that harm, the adequacy of the remedial services DYFS provided A.P., and whether the termination of A.P.'s parental rights to S.H. would do more harm than good. Moreover, DYFS will bear the burden of establishing the standards for the termination of parental rights by "clear-and-convincing-evidence" rather than the lesser burden of proof by a "preponderance of the evidence" that would apply in an action under Title 9. *See K.M., supra,* 136 *N.J.* at 557, 643 *A.*2d 987.

### III.

There are several additional matters that warrant brief comment.

■ First, A.P.'s counsel suggested in response to our questions at oral argument that DYFS was required to secure the permission of the trial court in the Title 9 action before filing a Title 30 action for termination of parental rights. We find nothing in Title 9 or Title 30 to support the existence of such a requirement. To the contrary, we read *N.J.S.A.* 30:4C–15 to confer sole authority upon DYFS to determine whether a Title 30 action should be filed.[3] In fact, subject to certain limited exceptions, *see N.J.S.A.*

---

[3] We have no occasion to consider the circumstances under which a defendant in a Title 30 action may move for dismissal on the ground that the filing of that action violated an order entered in the Title 9 action, such as an order requiring

30:4C–15.3, *N.J.S.A.* 30:4C–15 requires DYFS to file a petition for the termination of parental rights "no later than when the child has been in placement for 15 of the most recent 22 months."

Second, the Supreme Court has taken note of the "unnecessary complexity . . . introduced into the disposition of . . . child-welfare cases by the parallel but not congruent tracks of Title 9 and Title 30 proceedings" and suggested that the Legislature consider "combin[ing] both avenues of child advocacy under a single title." *In re Guardianship of G.S., III,* 137 *N.J.* 168, 179, 644 *A.*2d 1088 (1994). The convoluted procedural history of this case provides another illustration of the desirability of legislative attention to the relationship between Titles 9 and 30 and consideration of enactment of a single unified statute to govern such proceedings.[4]

Third, *N.J.S.A.* 30:4C–15.2 requires "[a] final hearing for guardianship [to be] held within three months from the date the petition is filed." There is no exception for a case in which a related Title 9 action is pending before a trial or appellate court. Strict enforcement of this mandate "furthers the important [legislative] policy preference for the permanent placement of children." *K.M., supra,* 136 *N.J.* at 558, 643 *A.*2d 987. Therefore, absent unusual circumstances, a Title 30 action should be promptly tried to conclusion without regard to the pendency of a related Title 9 action even if that action was not mooted by the filing of the Title 30 action. Indeed, were it not for the improvident grant of a stay of the Title 30 action for the termination of A.P.'s parental rights as to S.H., the trial of that action undoubtedly would have been completed many months ago.

For the foregoing reasons, the appeal is dismissed as moot.

---

the return of the child to the parent, because no such order was entered in this case.

[4] We note that the New Jersey Law Revision Commission has recently proposed amendments to Title 9 that seem to be partially directed to this goal. *See* N.J. Law Revision Comm'n, *Title 9 Draft Tentative Report* 1 (Nov. 10, 2008), http://www.lawrev.state.nj.us/children/childrenDTR111008.pdf (last visited July 2, 2009).