# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2081-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.C.,

     Defendant-Appellant,

and

M.E.,

     Defendant.

_____

IN THE MATTER OF J.C. and V.E., minors.

_____

Submitted March 19, 2018 – Decided  September 11, 2018

Before Judges Messano, Accurso and Vernoia.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Ocean County,
Docket No. FN-15-0044-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Victor E. Ramos, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Cynthia McGeachen, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

In this protective services matter, defendant A.C. appeals from a now final June 8, 2016 order, entered after a summary hearing pursuant to N.J.S.A. 30:4C-12 (Section 12), reflecting her family's continued need of services and extending the Division of Child Protection and Permanency's care and custody of her two minor children. The order became final in December 2016 when the Division dismissed the Title 30 protective services case when it filed a guardianship complaint against defendant.[1]

Defendant claims the trial court never acquired jurisdiction to permit the Division to direct services and retain care and custody of the children because

---

[1] See N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 164-65 (App. Div. 2003) (distinguishing an interlocutory order finding abuse or neglect from a final and appealable dispositional order).

A-2081-16T1

her stipulation to the need for both was the result of ineffective assistance of her counsel. She further claims she was subsequently denied notice of the June 2016 summary hearing, and that the trial court's finding at the hearing that her family continued to be in need of services and extending the Division's care and custody of the children was not supported by adequate, substantial, credible evidence in the record.

We conclude the Division's filing of the guardianship action effectively mooted this appeal, see N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 261-64 (App. Div. 2009), and that defendant must bring her challenge to the Family Part's jurisdiction in the guardianship action, or risk its loss through operation of laches, see N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 445-46 (2012).

Defendant's two young children, a girl almost three and another girl just three months at the time of these events, were the subject of an emergency removal in August 2015 after another domestic violence incident between defendant and her partner M.E., the father of the infant. Defendant had recently obtained a temporary restraining order against M.E. after she alleged he pushed her, punched her and chased her around their apartment with a knife, which he plunged into the door of the bedroom in which she had taken

A-2081-16T1

refuge with the children. Defendant admitted to the Division's intake workers that she used the baby as a shield on that occasion, as she had on others, because M.E., whom she claimed was abusing steroids and Suboxone, would not hit her when she was holding his daughter.

After defendant dismissed the temporary restraining order, the Division arranged for her temporary housing at a local motel, and defendant agreed to a safety plan forbidding M.E. to have any contact with the children. Defendant also agreed to undergo a psychological evaluation, meet with the Division's domestic violence liaison and contact Providence House for domestic violence services. The Division received another referral days later that defendant was "constantly screaming and cursing" at her toddler, and that the child had fallen into the motel pool when defendant left her in the care of other residents. Defendant denied yelling at the toddler but admitted she fell into the pool after defendant asked other residents to watch the toddler when defendant went to feed the baby. Defendant signed another safety plan agreeing to never leave the child alone near the pool, and the Division provided her an emergency 911 cell phone to use in the event M.E. ever appeared at her residence.

The Division removed the children several days later, after defendant was arrested for simple assault of M.E. following an argument at the motel that

4

turned physical. M.E. claimed defendant picked him up to go to a bar in Seaside Heights. He claimed defendant flirted with other men at the bar, prompting an argument between the two of them, after which he left for the motel where defendant's great aunt was caring for the children. When defendant returned to the motel, they continued to argue and M.E. claimed defendant struck him on the head. Police, who noted defendant appeared under the influence of alcohol, arrested her after seeing proof of injury.

Defendant's story was different. She denied picking up M.E. Instead, she claimed he just showed up at the bar, where he was eventually escorted out by bouncers. She also denied she told M.E. where she lived, speculating that one of his friends must have seen her car at the motel. She told the Division workers she returned to the motel only after her great aunt appeared at the bar and told her M.E. was at the motel with the children, which defendant knew was a violation of the safety plan. She claimed she struck M.E. in self-defense only after he pushed her and she felt threatened.

After the emergency removal, the Division filed a complaint detailing those events and defendant's history with the Division, including her prior substantiation for neglect of another child. That finding stemmed from defendant and a partner being under the influence of drugs in a car with

defendant's son in 2010, resulting in defendant's arrest for possession. Defendant's rights to her son were terminated in 2012, and he was adopted by defendant's mother. Defendant acknowledges she formerly had a ten-bag-a-day heroin habit. She has been on methadone maintenance for several years, including throughout these proceedings.

The Division also noted in the complaint that the month before defendant obtained her temporary restraining order against M.E., the Ocean County Board of Social Services made a referral to the Division regarding defendant's ability to care for her newborn. The referral was prompted by staff having observed defendant "nodding off" while visiting the office with the baby. The Board expressed concern that defendant might be overmedicated.

An investigation revealed defendant, in addition to methadone, had also been prescribed Klonopin and Zoloft. At the Division's request, both defendant and M.E. attended substance abuse evaluations. M.E. was referred for an extended assessment. Although the Division's count of defendant's Klonopin did not match the amount she should have had in her possession, she tested negative for non-prescribed substances and the Division closed the case against her. The Division did not refer defendant for treatment as she was already in treatment.

6

In its complaint, the Division sought an order for care and custody of the children under Title 9 and Title 30. At the initial hearing on August 25, 2015, three days after the removal, defendant, through her counsel, consented to jurisdiction and did not oppose the Division's application, but reserved the right to do so on the return date. The court found the Division "had reasonable cause to remove the children from the household based on allegations of both substance abuse and violence in the household." On the return date, the court continued custody, care and supervision with the Division and the children were continued in placement with defendant's sister. The transcript from that hearing is not in the record.

When the matter returned for a Title 30 summary hearing on December 21, 2015, counsel for the Division advised that defendant and M.E. "have signed off on the Title 30 summary order." That order, which defendant and her counsel signed consenting to both its form and entry, provides, among other things, that the court finds "[b]y consent, based on the testimony set forth on the record and having reviewed the defendant's voluntary admission(s), that" defendant "knowingly, willingly and voluntarily" agreed to give up her "right to a summary hearing" and that "[h]er family is in need of services due to domestic violence concerns." (Emphasis in original.)

A-2081-16T1

Counsel for defendant argued the Division should continue its care and supervision of the children but return custody to defendant, or that the children be placed with defendant's mother, the adoptive parent of defendant's older child, and defendant allowed liberal, supervised visitation in order to assist her mother with all three children. Counsel argued the Title 30 order was based on domestic violence issues, "[t]hat's why there's a continued need for services." Acknowledging that defendant "does have a drug history," counsel contended

> the court report and the various attachments note that she is in [Jersey Shore Addiction Services], and she's doing very well in that program. She is complying with the court services, and we are simply asking that she be allowed to have her children back; that it be supervised by her mother.

Defendant's counsel acknowledged the psychologist who evaluated defendant opined in an attachment to the court report that placing the children with defendant's mother "does not seem the best arrangement." Counsel argued, however, that the expert's opinion was based on an incomplete understanding of defendant's mother's position. Counsel contended "[t]he maternal grandmother is ready, willing and able to care for them. She just needs a little help, and that would be from my client." Counsel relied on that portion of the psychologist's opinion recommending defendant "engage in counseling to address the P.T.S.D. and continue to wean off the methadone and

8

to avoid further concerns over sedation and fatigue, and then re-explore the maternal grandmother's home as an option," as supportive of defendant's request to "change to the care and supervision and just allow the maternal grandmother to supervise [defendant's] contact."

Having heard argument and after reviewing the court report and its attachments, the court denied defendant's request to return custody to her or her mother as not in the children's best interests at that time, and continued placement with defendant's sister. The judge, however, ordered the expedited psychological evaluation of defendant's mother, which the Division requested in order to assess her for placement, and which was supported by the Law Guardian, in order to determine quickly whether such a placement would be appropriate for the children, and if so, that it be effected as soon as possible. The judge ordered that defendant continue in substance abuse treatment and that she be referred for services as recommended by the evaluating psychologist, including individual counseling. The judge further ordered that defendant continue receiving domestic violence services at Providence House.

Following a compliance hearing in March 2016 that maintained the status quo, the court conducted another Title 30 summary hearing on June 8, 2016. Although defendant maintains she was not provided notice that a

summary hearing would occur on that date, and the Division concedes the order entered after the March compliance hearing checked the box noting the next hearing would be a compliance review, not a summary hearing, defendant's counsel did not object to proceeding on June 8. Indeed, all counsel appeared prepared to participate in a summary hearing on that date and there is no indication otherwise in the transcript.

Specifically, after counsel made their appearances on the record, the judge stated she had "the matter scheduled for a Title 30 summary hearing today." The deputy attorney general announced the Division was seeking "to continue jurisdiction based upon a need for services as to the mother, [defendant]," and the judge asked defendant's counsel whether defendant was "going to consent that the Division needs to continue to be involved in this case, or do we have to have a summary hearing." When defense counsel replied that "[w]e'd need a summary hearing in this matter," the judge directed the Division to "call your witness," and the permanency worker was sworn in.

The worker testified the Division was involved with defendant's family because the children were in placement "as a result of domestic violence issues and some substance abuse concerns" as to both parents. The worker made clear the case was not one for abuse and neglect, and services were being

10

offered to correct the conditions that led to the children's placement. She testified the Division was providing therapeutic and supervised visitation, substance abuse evaluations and individual counseling.

The worker testified defendant had successfully completed domestic violence counseling and was compliant with individual counseling. She testified she was "not aware" of whether defendant and M.E. continued in a relationship, although she believed they no longer lived together.

The court admitted the worker's report without objection, which noted defendant was administratively discharged from Jersey Shore Addiction Services in April 2016 following five positive urine screens over four weeks in March. Defendant refused a random screen on April 19. The worker testified defendant's screens on May 31 and June 3 were negative, as was a random screen on May 27. The worker's report also noted that M.E. was granted a temporary restraining order against defendant on May 5. The report noted "[t]he circumstances surrounding this restraining order are unclear" and further noted the temporary order was dismissed when M.E. failed to appear for a hearing on a final order.

Following the hearing, the judge found the Division established by a preponderance of the evidence that the children required the continued care

11

and supervision of the Division, that defendant remained unable to adequately care for the children based on substance abuse and domestic violence between defendant and M.E., and that the family continued to be in need of services. In an amplified statement of reasons pursuant to R. 2:5-1(b), the court provided a lengthy history of the matter and explained the worker testified it was in the children's best interests to continue the matter to allow defendant to complete recommended services and the court report "indicated there were safety and risk factor of substance abuse and domestic violence, which continued to be issues."

The court conducted a permanency hearing on August 2, 2016, at which it approved the Division's plan for termination of parental rights followed by adoption. The judge noted defendant was arrested for possession of marijuana on June 23, 2016, coinciding with a hair follicle test, which defendant contested, evidencing use of marijuana. The judge also noted defendant had not completed substance abuse treatment and "recently left a visit with her children, and then had a physical altercation with [M.E.] in the parking lot of the Division office." Following the filing of a complaint for guardianship, the court dismissed the Title 30 proceeding in a dispositional order on December 12, 2016. This appeal of the June 8, 2016 summary hearing order followed.

Defendant raises the following issues for our consideration:

POINT I

THE TRIAL COURT'S DETERMINATION UNDER N.J.S.A. 30:4C-12 THAT THE FAMILY CONTINUED TO BE IN NEED OF SERVICES REQUIRING THE CONTINUATION OF THE CHILDREN IN THE CUSTODY, CARE, AND SUPERVISION OF DCPP WAS NOT SUPPORTED BY ADEQUTE SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD. (RAISED BELOW).

POINT II

A.C. WAS DENIED HER DUE PROCESS RIGHT TO TIMELY AND ADEQUATE NOTICE OF DCPP'S BASIS FOR THE JUNE 8, 2016 SUMMARY HEARING. (NOT RAISED BELOW).

POINT III

THE TRIAL COURT DID NOT ESTABLISH PROPER JURISDICTION OVER THE MATTER TO ALLOW DCPP TO RETAIN CARE CUSTODY AND SUPERIVISION OF THE CHILDREN OR TO DIRECT SERVICES GIVEN THE INADEQUACY OF THE ADMISSION OBTAINED AT THE DECEMBER 21, 2015 SUMMARY HEARING THAT RESULTED FROM THE INADEQUATE REPRESENTATION OF A.C.'S TRIAL COUNSEL THAT DAY. (NOT RAISED BELOW).

A. DCPP's Defective Stipulation and The Trial Court's Inadequate Jurisdiction.

B. A.C.'s Trial Counsel's Ineffective Assistance.

13

The Division argues this appeal is moot because the only practical effect of the summary order extending the Division's care, supervision and custody of defendant's daughters and reflecting her family's continued need of services "is that her children were not in her custody while the [protective services proceeding] was pending." The Division asserts that as current and future custody determinations will be made in the pending guardianship action, defendant "faces no ongoing consequences from the [o]rder on appeal."

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corrs., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (internal quotation marks and citation omitted). If, however, "a party 'still suffers from the adverse consequences to her caused by [a] proceeding,' an appeal from an order in that proceeding is not moot." A.P., 408 N.J. Super. at 262 (quoting Div. of Youth & Family Servs. v. G.M., 398 N.J. Super. 21, 51 (App. Div. 2008), aff'd as modified on other grounds, 198 N.J. 382, 387 (2009)).

A-2081-16T1

Judged by those standards, we agree with the Division the matter is moot. The Division instituted this action seeking the temporary care, custody, and supervision of defendant's two daughters pursuant to N.J.S.A. 30:4C-12 and N.J.S.A. 9:6-8.21 to -8.73. See N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 31 (2013) (noting "the Division usually pleads Title 9 and Title 30 claims concurrently in order to facilitate the efficient processing of assistance to the family"). It never alleged defendant abused or neglected either child.

The Title 30 protective services case was dismissed, following the filing of a guardianship complaint, without any finding other than the best interests of the children required the Division to assume temporarily their care, supervision and custody pursuant to Section 12. See I.S., 214 N.J. at 33 (explaining that Section 12 "provides the means for the Division to effectuate services to children in need when a parent does not consent to the Division's supervision, care, or custody"). The disposition order entered in this protective services case based on a finding under Section 12 thus has none of the adverse consequences of a final order of disposition based on a finding of abuse or neglect. See A.P., 408 N.J. Super. at 262-63 (explaining the adverse consequences to a parent of a final order of disposition entered under N.J.S.A.

9:6-8.50 through N.J.S.A. 9:6-8.58, including inclusion of the parent's name in the Central Registry).

We acknowledge the trial court's finding under Section 12 could form the basis of jurisdiction in a guardianship case, as it establishes one of the five statutory grounds for instituting an action to terminate parental rights under N.J.S.A. 30:4C-15.[2]  See N.J.S.A. 30:4C-15(c) (permitting the filing of a petition to terminate parental rights when "it appears that the best interests of any child under the care or custody of the division require that he be placed under guardianship").  Although that might suggest a continuing adverse consequence to defendant, she remains free to contest the Division's continued care and custody of the children, and thus the guardianship court's jurisdiction, in the guardianship case.  Cf. N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 120-21 (2011) (explaining the limited preclusive effect of Title 9 determinations in any subsequent and related guardianship proceeding).  As Justice LaVecchia explained in I.S., a protective services order entered pursuant to Section 12 is only intended to be temporary and requires periodic review by the court.  N.J.S.A. 30:4C-12; see also I.S., 214 N.J. at 37; N.J. Div.

---

[2]  The guardianship complaint is not included in the record, and we are unaware of the asserted basis of jurisdiction in that matter.

of Youth & Family Servs. v. J.C., 423 N.J. Super. 259, 267-68 (App. Div. 2011).

Indeed, as our Supreme Court has warned that a parent failing to contest the Division's authority " to exercise 'care or custody,' . . . at or about the time of the filing of the guardianship petition" risks losing the opportunity to do so by operation of laches, F.M., 211 N.J. at 445-46, an appeal of a summary order under Section 12, even if successful, may well be a Pyrrhic victory. The Court's directive in F.M. is clear: "[i]f there is to be a challenge to [DCPP's] very right to proceed with a termination-of-parental-rights hearing, it must come before the hearing." Id. at 445. As Justice Albin explained, even were there merit to a claim that the Division lacked proper "care or custody" of a child at the time it filed its guardianship complaint, "it would be questionable public policy to upend a properly conducted guardianship hearing at which the family court has fairly found that termination of parental rights is in the best interests of the children." Id. at 446.

Any decision of ours in defendant's favor on the care and custody question would likely be similarly ineffective "to upend a properly conducted guardianship hearing" culminating in the termination of defendant's parental rights to her daughters for those same reasons of public policy. Thus it is

17

imperative that defendant, and indeed any parent wishing to challenge the care and custody the Division obtained of his or her child in a protective services proceeding ending with the filing of a guardianship complaint, pursue that challenge in the only case where success will matter — the subsequent guardianship. Accordingly, that the trial court's summary order in this protective services case could form the basis of jurisdiction in the guardianship proceeding is not a sufficiently adverse consequence to make defendant's appeal of that order justiciable. See A.P., 408 N.J. Super. at 262.

In sum, this case is moot because any decision we would make could have no practical effect on the temporary care and custody orders entered under Section 12 in the Title 30 protective services case, and any adverse consequence defendant might suffer from those orders in any subsequent guardianship proceeding can, and indeed must, be addressed in that proceeding. Having reviewed the record, we are convinced that none of the other issues defendant raises is of such substantial public importance and so unlikely to recur in a live controversy as to compel our consideration of the appeal on the merits. See De Vesa v. Dorsey, 134 N.J. 420, 428-29 (1993).

Appeal dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2081-16T1