# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0575-19T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.T.R.,

     Defendant-Appellant,

and

F.T.S.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF F.K-A.S.,
a minor.

_____

Submitted October 1, 2020 – Decided October 22, 2020

Before Judges Sumners, Geiger, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0144-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Carol A. Weil, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Laura Dwyer, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; David B. Valentin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Following a five-day trial concluding on August 7, 2019, Judge Francine Axelrad rendered an eighty-plus-page oral opinion and entered a September 18, 2019 order terminating the parental rights of T.T.R. (Teresa)[1] and F.T.S. (Fred) to their almost four-year-old daughter F.K-A.S. (Flora). Only Teresa appeals that order. The Division and Law Guardian oppose. For the reasons that follow, we reject Teresa's contentions that the Division of Child Protection and

---

[1] We use pseudonyms or initials to protect the privacy of the child and parents. R. 1:38-3(d)(12). We use first names for ease of reference; we mean no disrespect.

Permanency (Division) failed to meet its statutory burden under the four-prong best interests test, codified at N.J.S.A. 30:4C-15.1(a), by clear and convincing evidence.

## I.

The Division first became involved in Flora's life within weeks of her July 2015 birth, when Teresa tested positive for PCP while at the hospital after fleeing Fred due to a domestic violence incident. Flora was subsequently placed with a maternal aunt in Virginia. The placement, however, was short-lived because the Division's found the placement unsatisfactory during a visitation was conducted. In January 2016, Fred was granted custody of Flora and ordered to supervise all of Teresa's contact with the child.

Thereafter, Flora's placements continued to be brief. In March 2016, Flora was removed from Fred's custody when the Division learned both Teresa and Fred were arrested and incarcerated as the result of a drug raid at their home because Fred was allegedly selling drugs there. In addition, contrary to the placement plan, Teresa admitted to being home alone with Flora while Fred was at work. For the next few months, Flora was placed with her parents' neighbor until she decided she could no longer take care of Flora. The Division then

A-0575-19T2

placed Flora with a resource parent, P.M. (Penny), who continues to care for her and wants to adopt.

In August 2017, the Division's permanency plan to terminate parental rights followed by adoption with Penny was approved. The Division then filed a complaint for guardianship three months later. After three trial dates in May 2018, the Division withdrew its complaint before a decision was rendered. This was followed by the Division's efforts – which it deemed unsuccessful – to reunify Flora with Fred. Consequently, the Division filed a new complaint for guardianship, which is the subject of this appeal.

## II.

In reviewing a decision by a trial court to terminate parental rights, we give "deference to family court[s'] fact[-]finding" because of "the family courts' special jurisdiction and expertise in family matters[.]" Cesare v. Cesare, 154 N.J. 394, 413 (1998). The judge's findings of fact are not disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "[T]he conclusions that logically flow from those findings of fact are, likewise,

entitled to deferential consideration upon appellate review." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006).

Here, the judge carefully reviewed the evidence presented, and thereafter concluded the Division had met, by clear and convincing evidence, all of the legal requirements for a judgment of guardianship. Her oral opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), accords with In re Guardianship of K.H.O., 161 N.J. 337 (1999), In re Guardianship of DMH, 161 N.J. 365 (1999), and New Jersey Division of Youth & Family Services v. F.M., 211 N.J. 420 (2012), and is supported by substantial and credible evidence in the record. We therefore affirm substantially for the reasons the judge expressed in her comprehensive and well-reasoned opinion. We add the following remarks as to each prong.

A. Prongs One and Two

As to prong one, the Division must prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). "[T]he relevant inquiry focuses on the cumulative effect, over time, of harms arising from the home life provided by the parent." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 289 (2007).

"Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights."  In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992) (citing In re Guardianship of J.C., 129 N.J. 1, 18 (1992)).  As a result, "courts must consider the potential psychological damage that may result from reunification[,] as the 'potential return of a child to a parent may be so injurious that it would bar such an alternative.'"  N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 480-81 (App. Div. 2012) (quoting N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 605 (1986)).

"The absence of physical abuse or neglect is not conclusive."  A.W., 103 N.J. at 605 (quoting In re Guardianship of R., 155 N.J. Super. 186, 194 (App. Div. 1977)).  "A parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child."  DMH, 161 N.J. at 379.  "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect."  Id. at 383 (citation omitted).

As to prong two, the Division must prove that "[t]he parent is unwilling or unable to eliminate the harm facing the child[ren] or is unable or unwilling to provide a safe and stable home . . . and the delay of permanent placement will

add to the harm." N.J.S.A. 30:4C-15.1(a)(2). That harm may include evidence that separating the children from their resource parents "would cause serious and enduring emotional or psychological harm . . . ." Ibid.

The Division can establish the second prong by proving that a "child will suffer substantially from a lack of stability and a permanent placement[,] and from the disruption of" a bond with the resource parents. K.H.O., 161 N.J. at 363. Because they are related, evidence supporting the first prong may also support the second prong "as part of the comprehensive basis for determining the best interests of the child." DMH, 161 N.J. at 379.

Teresa argues Judge Axelrad's finding that the Division met its burden under the first prong is not supported by the record and thus was error. She cites to the proposition that "particularized evidence" is needed to establish "the specific circumstance." New Jersey Division of Youth and Family Services v. G.L., 191 N.J. 596, 606 (2007) (citation omitted). Teresa contends she was never found to have neglected or harmed her daughter. The fact that there were N.J.S.A. 30:4C-12 summary findings on January 7 and October 27, 2016, based on her stipulation that her family was in need of services, does not satisfy prong one. She further argues the judge erred in finding the Division had proven prong

one, by merely citing domestic violence that caused Flora's first removal, parental drug use, and prior incarcerations.

Based on the judge's credibility findings of the Division's witnesses – a Division caseworker and Dr. Linda Jeffrey, Ph.D. – there is clear and convincing evidence to support the judge's finding that a continued parental relationship with Teresa would harm Flora based on her mother's history of being unable to provide a home that properly nurtures and cares for her. The judge cited "[Teresa's] continued drug abuse, . . . domestic violence in the home, . . . incarcerations of the parents[,] and the inability to care for [Flora]." Under prong two, the judge cited the caseworker's and Dr. Jeffrey's respective testimony regarding Teresa's inadequate use of services offered by the Division since Flora's birth and inability to provide a home "to date." In particular, the judge pointed to Dr. Jeffrey's diagnosis of Teresa's "lack of attunement . . . lack of anticipating [Flora's] needs" in her own "self-reporting." The judge stressed Teresa's "[b]ad behavior [with Division workers] in front of [Flora] many times" goes to "the [second] prong [being] unwilling or unable to eliminate the harm facing the child or unable or unwilling to provide a safe and stable home for the child."

A-0575-19T2

Significantly, Judge Axelrad had a front row seat to Teresa's belligerent and disrespectful behavior during the trial. While the judge was delivering her oral decision, the following occurred:

> [THE COURT]: I give significant weight to Dr. Jeffrey's opinions, particularly including [Teresa's] severe chronic adjustment disorders, lack of emotional security, paranoia and anger, lack of emotional maturity, inability to self-regulate, and to follow rule-governed behavior and to role model for her daughter, as well as Dr. Jeffrey's conclusions that [Teresa] is unable to provide a minimal level of safe parenting, and that [Flora] would be at risk if reunified with her now or in the foreseeable future.
>
> [TERESA]: Okay.
>
> THE COURT: And I'm going to address that specifically when I address Dr. Jeffrey's testimony.
>
> [TERESA]: Okay.
>
> THE COURT: However, let me state that the testimony from the lips of Dr. Jeffrey regarding her observations, results of the psychological tests, clinical diagnoses and conclusions unimpeded, because Ms. Robinson did not attend court on those two days, days 3 and 4, July 16 and July 22nd, came to life in my courtroom in full illustration by [Teresa's] conduct during each of the days –
>
> [TERESA]: You're God damned right.
>
> THE COURT: – that she did appear for trial. These are my observations reflected at times on the record, and also reflected on the record by [Teresa's] comments,

A-0575-19T2

similar to the type of comments that are being made now by her on the phone.

[TERESA]: Stop, they just want to know I'm a (inaudible).

THE COURT: And in about one minute, [Teresa], I am going to hang up the phone.

[TERESA]: (Inaudible) shut the fuck up.

THE COURT: Okay. I'll reflect for the record that she just told me to shut the fuck up. I've now had enough, and I'm hanging up. She is now disconnected from this proceeding.

I will also note for the record that when I reference – this [c]ourt has given her due process, this [c]ourt has tolerated the disrespect that she has shown for the [c]ourt and to her attorneys. I will not tolerate her continuing to talk over me so that I cannot conduct myself and give this opinion, and I will not tolerate that disrespect and profanity. I have now hung up that phone. Her attorney is here. Her attorney can provide her a copy of the transcript if she wishes.

I'll also note for the record while I'm at it, and the record does reflect, that this [c]ourt entered orders, for the reasons that are clear on the record, that Ms. Robinson was not permitted to be present in the courtroom during the [c]ourt's decision, that she could participate by phone. But as is clear, she is unable to conduct herself in a mature manner.

Additionally, while I'm at it, I did use the full F word here just to reflect on the record. And what I'm going to do throughout this proceeding is I am going to say simply the F word, because as – when I reference

various of the contact sheets, they use the – that word, because that is a word in Ms. Robinson's vocabulary that she said to – as she said to the [c]ourt, she said to the caseworkers over and over again. So I am going to simply, for the decency of the record, say the F word, rather than saying that word. But let the record reflect she actually used the words.

So my observations of [Teresa's] demeanor during [the caseworker's] testimony. While she was discussing problems with [Teresa's] attendance and participation in services, [Teresa] began muttering, using profanity directed to the [c]ourt and the attorneys in front of the sheriff's officer as she left the courtroom during the break. Later on, she had a full[-]fledged outburst. Her attorney had to take her aside to calm her down. She was confrontational and disrespectful to the [c]ourt when I addressed her respectfully and asked her to calm down so that I could hear the testimony.

As for Teresa's argument that there has been no finding that she abused or neglected her daughter, we agree with the Law Guardian's position this court determined in N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 259-60 (App. Div. 2009) (citing N.J. Div. of Youth & Family Servs. v. K.M., 136 N.J. 546, 556-59 (1994)) that a finding of abuse or neglect is unnecessary to satisfy prong one.

In addition, although a parent's incarceration is not a per se justification for termination of parental rights, it is "unquestionably relevant" to the decision. Matter of Adoption of L.A.S., 134 N.J. 127, 136-37 (1993). Incarceration is

11

probative of abandonment but does not justify termination as a matter of law. Id. at 137. "[I]ncarceration alone—without particularized evidence of how a parent's incarceration affects each prong of the [best interests of the child] standard—is an insufficient basis for terminating parental rights." N.J. Div. of Youth & Family Services v. R.G., 217 N.J. 527, 556 (2014). Thus, when determining whether incarceration constitutes abandonment, courts should consider the "nature of the contact between parent and child before and after incarceration, the efforts made by the parent to maintain contact with the child following imprisonment, and the attempts during incarceration to undertake as much responsibility for the child's welfare as possible." L.A.S., 134 N.J. at 138. Here, Teresa's incarceration was just one factor relied upon by the judge in finding she harmed Flora. The fact that it occurred when Flora was a baby is disconcerting, given how much she relied on her parents at that point.

B. Prong Three

As to prong three, the Division is required to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home[,] and the court [will] consider[] alternatives to termination of parental rights[.]" N.J.S.A. 30:4C-15.1(a)(3). This prong "contemplates efforts that focus on reunification of the parent with the child and

assistance to the parent to correct and overcome those circumstances that necessitated the placement of the child into foster care." K.H.O., 161 N.J. at 354.

Within the meaning of prong three, "reasonable efforts" include, but are not limited to:

> (1) consultation and cooperation with the parent in developing a plan for appropriate services;
>
> (2) providing services that have been agreed upon, to the family, in order to further the goal of family reunification;
>
> (3) informing the parent at appropriate intervals of the child's progress, development, and health; and
>
> (4) facilitating appropriate visitation.
>
> [N.J.S.A. 30:4C-15.1(c).]

"Whether particular services are necessary in order to comply with the [reasonable] efforts requirement must . . . be decided with reference to the circumstances of the individual case before the court[.]" DMH, 161 N.J. at 390.

The Division

> must encourage, foster and maintain the bond between the parent and child as a basis for the reunification of the family. [It] must promote and assist in visitation and keep the parent informed of the child's progress in foster care. [It] should also inform the parent of the necessary or appropriate measures he or she should

pursue in order to continue and strengthen that relationship and, eventually, to become an effective caretaker and regain custody of his or her children.

[Id. at 390 (citing N.J.S.A. 30:4C-15.1(c)).]

A court is required to consider alternatives to the termination of parental rights. N.J.S.A. 30:4C-15.1(a)(3). "[A]ssessment of relatives is part of the Division's obligation to consult and cooperate with the parent in developing a plan for appropriate services that reinforce the family structure." N.J. Div. of Youth & Family Servs. v. K.L.W., 419 N.J. Super. 568, 583 (App. Div. 2011).

N.J.S.A. 30:4C-12.1(a) requires the Division to initiate a search for relatives who may be willing and able to provide the care and support required by the child within thirty days of accepting a child into its care or custody. The Division must assess each interested relative and, if it determines that the relative is unable or unwilling to care for the child, inform them of its reasons for a denial of placement. N.J.S.A. 30:4C-12.1(a)-(b).

"It is the policy of [the Division] to place, whenever possible, children with relatives when those children are removed from the custody of their parents." N.J. Div. of Youth & Family Servs. v. K.F., 353 N.J. Super. 623, 636 (App. Div. 2002). "The Division's statutory obligation does not permit willful blindness and inexplicable delay in assessing and approving or disapproving a

14

relative known to the Division[.]" K.L.W., 419 N.J. Super. at 582. It cannot ignore relatives "based upon an arbitrary, preordained preference for the foster placement" and "must perform a reasonable investigation of . . . relatives that is fair, but also sensitive to the passage of time and the child's critical need for finality and permanency." N.J. Div. of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 87 (App. Div. 2013).

Teresa argues the judge erred in accepting the Division's claim it had to proceed with termination of her parental rights because none of her relatives were available to care for Flora. She claims the Division presented insufficient evidence that it sought out her family members for a possible Kinship Legal Guardianship. K.L.W., 419 N.J. Super. at 578-80 (holding that even when a parent affirmatively asks the Division not to explore a specific relative, the agency is obligated to explore relative placements independent of the parent's participation in the process); N.J.S.A. 9:6B-4(b). In particular, she points to the Division's failure to seek out her maternal grandmother A.W. (Amy) to care for Flora.[2] She also contends reasonable services were not provided to her because

_____

[2] The Law Guardian contends this argument was not raised at the guardianship hearing and we should not consider it. However, "[p]arental rights and ineffective assistance of counsel being matters of great public interest, we have considered the parties' arguments on this issue." N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J. Super. 322, 343 (App. Div. 2007).

the Division did not address her actual needs, i.e. trauma-based therapy, as enumerated by her psychiatrist.

The record supports Judge Axelrad's findings that "[t]here are no alternatives to termination of parental rights" and the Division made reasonable efforts to offer Teresa services to address her problems that led to Flora's removal. The Division ruled out Amy because she had a pending Interstate Compact on the Placement of Children evaluation and a scheduled bonding evaluation with Flora, which she failed to attend on two occasions. This clearly evidenced Amy's lack of interest in accepting the responsibility to care for Flora. As for services offered to Teresa, the record supports the judge's decision that the Division made more than reasonable efforts to reunify Teresa with her daughter[,] by offering her the following services: psychological evaluations, psychiatric evaluations, individual therapy with three different providers, substance abuse evaluations and treatment, random urine screens, visitation, therapeutic visitation services, and bonding evaluations.

C. Prong Four

Under prong four, the Division must demonstrate by clear and convincing evidence that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The prong characterizes a child's need for

16

permanency as "an important consideration." M.M., 189 N.J. at 281. "The question to be addressed under that prong is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O., 161 N.J. at 355. In order to weigh any potential harm from terminating parental rights against a child's separation from his or her foster parents, a court must consider expert testimony on the strength of each relationship. J.C., 129 N.J. at 25. "[W]here it is shown that the bond with foster parents is strong and, in comparison, the bond with the natural parent is not as strong, that evidence will satisfy . . . N.J.S.A. 30:4C-15.1(a)(4)." K.H.O., 161 N.J. at 363.

Teresa's contends the Division did not satisfy prong four. She argues Dr. Jeffrey, who performed bonding evaluations of Flora with Teresa, Fred, and Penny, failed to focus on the effect termination of her parental rights would have on Flora, instead emphasizing the bond between Flora and Penny. Teresa also contends she never had the chance to parent and bond with Flora because the Division took care and custody of Flora within days of her birth and Teresa thereafter only had a few months to bond with her when Fred had custody of Flora for a few months. Flora's admitted attachment to Penny does not

17

demonstrate, according to Teresa, that terminating Flora's ties to her family would not do her more harm than good.

In finding the Division satisfied prong four, Judge Axelrad relied upon Dr. Jeffrey's opinion that Flora would suffer severe and enduring harm if she was removed from Penny's care based on the strong attachment developed between them, and it would do more harm than good to Flora to place her in Teresa's care and custody. Dr. Jeffrey found that Teresa's bond with Flora was insecure. The judge also referred to Teresa's "anger-management" problems, as evidenced during the trial, i.e., during Dr. Jeffrey's testimony and the judge's oral decision, as indication that Teresa would not be able to overcome the harm Flora would suffer if she were removed from Penny. As for the limited time to bond with Flora, the judge reasoned if Teresa had done what the Division had asked of her to aid in reunification, she would not have "allow[ed] another year to pass with her child securely bonding to the resource parent." Considering the credible evidence cited by the judge, she properly determined the Division satisfied prong four by clear and convincing evidence.

In sum, we conclude the judge's termination of Teresa's parental rights was in Flora's best interests.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                                                     A-0575-19T2