# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5548-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.L.,

     Defendant,

and

J.J.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.J.,

     a Minor.

_____

       Submitted April 9, 2019 – Decided May 8, 2019

       Before Judges Suter and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0040-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Britt J. Salmon-Dhawan, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Margo E.K. Hirsch, Designated Counsel, on the brief).

PER CURIAM

Defendant J.J. appeals the Judgment of Guardianship that terminated his parental rights under N.J.S.A. 30:4C-15.1(a). He contends the trial court erred because there was not clear and convincing evidence under any of the four required portions of the statute to terminate his parental rights. We reject these arguments and affirm the judgment substantially for the reasons expressed by Judge William R. DeLorenzo, Jr., in his comprehensive written opinion.

Defendant and T.L. have two children but only M.J. (Marci)[1] is the subject of this appeal.[2] Marci was born in October 2015 and resided with her parents for two months until the Division of Child Protection and Permanency (Division) removed her on an emergency basis. Both parents had mental health problems, were not employed, were homeless, and their relationship was volatile. Neither parent was compliant with homemaker services, therapy or counseling. The Division was granted custody, care and supervision of Marci, who was placed with a resource parent where she continues to reside.[3]

T.L. agreed to terminate her parental rights on the condition that the resource parent adopt Marci.[4] Following a two-day trial that defendant did not attend, the trial court also terminated his parental rights.

---

[1] This is a fictitious name.

[2] Their older daughter, born fifteen months earlier, was residing with her paternal grandmother.

[3] By the conclusion of the trial, the older daughter also was residing with the same resource parent.

[4] T.L. did not appeal the Judgment of Guardianship accepting surrender of parental rights.

A-5548-17T2

## I

The Division was providing services to the family before Marci was born. Defendant was attending Comprehensive Behavior Healthcare (CBH) for therapy and medication monitoring. When Marci was born, defendant and T.L. were living in a motel; defendant was not employed. The Division engaged additional services that included family education and parenting classes at Care Plus's Families First program, and a homemaker to assist the family with daily tasks, transportation and appointments. The caseworker testified that these services were to prevent Marci's removal, to assist the family "with their mental illness and to help them with their financial and housing stability."

There were issues with defendant's compliance with the services. He did not want the homemaker and he did not keep appointments. By December 2015, they no longer could stay at the motel and they went missing for a brief period. The Division was concerned about defendant's mental health, specifically depression and anxiety, housing, and his volatile relationship with T.L. When the family was located, the Division removed Marci, who was then two months old, and placed her in the resource home where she currently resides. It was not successful in placing her with relatives.

A-5548-17T2

The caseworker testified at trial that defendant claimed he was "too tired to work or he was unable to focus to work." The family moved from living in shelters, to motels or with friends. He and T.L. had a volatile relationship and they were asked to leave shelters. The Division referred defendant to the "PATH" program "[t]o stabilize his mental health and to get stable housing," but within three months, PATH terminated its services and closed the case having "exhausted all options of housing the family." Defendant abandoned two jobs. He was referred to CBH for individual therapy, but would not go, and it "closed out" the services. The Division again referred him to the program, but he was closed out again due to missed appointments. Defendant attended a program for domestic violence, but he did not complete it, and that service was terminated. The Division referred defendant for parenting classes, and although he initially did not attend, he was referred again and completed it. Defendant also attended a psychological evaluation but would not go to the psychiatric evaluation. He would not sign releases for any of his records to assist the Division.

The caseworker testified that the Division met regularly with defendant to develop a plan for the family, but he did not make efforts to comply with the recommended services. His plan for reunifying with Marci was "to get a job and get [Marci] back and then he [would] be able to get shelter." However, he

5

had no job or housing and was not attending services. For the most part, he resided in shelters or on the streets.

The Division provided defendant with bus passes and tickets for transportation for visits with Marci. His visits were once a week supervised at the Division. He was supposed to have supervised visitation twice a week at Care Plus, but he did not attend any of those visits because he wanted the visits to include both children. Care Plus terminated its services; the Division resumed weekly supervised visitation at its offices. Defendant's visits became inconsistent later in 2017 because he moved to a shelter in Brooklyn. His last visit with Marci was in January 2018. The case worker testified that she did not know whether he was attending any services in New York.

Dr. Frank J. Dyer testified at the trial as an expert in forensic psychology. He conducted an individual psychological evaluation of defendant, a bonding assessment of the child and defendant, and a bonding assessment of the child and resource parent. He found defendant appeared to be suffering from "a clinical depression." Defendant blamed the Division for "any adverse conditions." He denied the need for domestic violence counseling, therapeutic services or medication.

A-5548-17T2

Dr. Dyer diagnosed defendant with a depressive disorder and "borderline personality disorder[5] with narcissistic features." He testified that defendant's case history suggested defendant was "extremely emotionally volatile" and could be triggered by "slight provocations." "The narcissistic component [was] evident in his attitude of knowing better than anybody." Dr. Dyer testified that because of defendant's mental health issues, he would not be able to respond to Marci in an appropriate manner. Defendant required intensive psychotherapy or medication. In Dr. Dyer's opinion, defendant lacked any insight into his mental health problems. He said that defendant did not "possess adequate parenting capacity and that his prognosis for acquiring adequate parenting capacity within the foreseeable future [was] extremely poor."

Dr. Dyer testified that Marci had either an "emotionally neutral connection" to defendant or "something of a positive connection," but defendant was not able to "provide a safe, stable, appropriately nurturing, structured and fulfilling home environment for her." In contrast, he said that Marci was "profoundly attached to her caretaker." If Marci were removed from her care, she would be "at risk for a traumatic loss," including "impairment of her basic

---

[5] Dr. Dyer testified this disorder is "characterized by emotional volatility, by extremely negative, abrasive, conflicted interpersonal relations and by some confusion in the individual sense of personal identity."

A-5548-17T2

trust, her self-esteem, and also her capacity to attach to new caretakers." He testified that defendant was not equipped to assist Marci in overcoming this harm. In his opinion, there was no advantage to giving defendant more time to remedy his parental deficits because the prognosis for this was poor, and Marci was securely attached to her resource parent. Dr. Dyer testified that adoption by the resource parent was in Marci's best interest.

The court entered a Judgment of Guardianship that terminated defendant's parental rights to Marci. In his written opinion, the court found that defendant had no "viable plan for the long-term care" of Marci. He was unemployed for substantial periods and lived in shelters or on the street. He had mental health issues, suffered from depression and declined to take his medication. He received services to address these issues but failed to complete them. He did not complete domestic violence counseling. The Division's psychologist found that defendant lacked the minimum parental capacity to safely parent Marci now or in the foreseeable future. Marci was "profoundly" attached to the resource parent and disrupting that would harm her.

The court found that the Division had proven each part of the four-pronged test under N.J.S.A. 30:4C-15.1(a). With respect to prong one, defendant "failed to provide a safe and stable home." He "made little or no progress in addressing

his parental deficits." Dr. Dyer testified that Marci would be at "very great risk of harm" if she were placed with defendant. The court found that prong one was satisfied because "the safety, health and development of [Marci] was endangered and continue[d] to be endangered to this day because [defendant] ha[d] failed to remediate his parental deficits."

Under prong two, the court found that defendant was unwilling or unable to eliminate the harms because "he [was] unable to continue a parental relationship without recurrent harm to his child." Defendant did not have stable or secure shelter; he did not attend services that were provided; he did not have regular employment; and he had no viable plan to care for Marci. Dr. Dyer testified that defendant was not likely to improve because of his attitude that he did not need services.

Under prong three, the court found the Division provided reasonable services to address these issues, which included: psychological and psychiatric evaluations, domestic violence counseling, visiting homemaker services and parenting classes. As the court observed, "[t]he fact that the Division was unsuccessful in reunifying [defendant] with [Marci] is not an indication that the Division failed to provide reasonable services or that the Division failed to make

9

an appropriate effort to help [defendant]." The court found the Division explored alternatives to placement but none were successful.

For the fourth prong, the court found that termination of defendant's parental rights would not do more harm than good. Marci lived with the resource parent for most of her life. Dr. Dyer testified there was a "profound" attachment and that disrupting that bond would harm Marci more than terminating her parental relationship with defendant. The court concluded that it was in Marci's "best interest" to terminate defendant's parental rights.

On appeal, defendant argues that the Division did not satisfy any of the four parts of N.J.S.A. 30:4C-15.1(a). He contends he was not provided proper or consistent visitation with his child; did not receive reasonable services to address his mental health issues and homelessness; that his parental relationship with the child was not harmful; he was willing and able to change; and that termination of his parental rights would be harmful.

II

N.J.S.A. 30:4C-15.1(a) authorizes the Division to petition for the termination of parental rights in the "best interests of the child" if the following standards are met:

(1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The Division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

A trial court's decision to terminate parental rights is subject to limited appellate review. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007); see Cesare v. Cesare, 154 N.J. 394, 413 (1998) ("Because of the family courts' special . . . expertise in family matters, appellate courts should accord deference to family court fact-finding."). The family court's decision to terminate parental rights will not be disturbed "when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Youth &

11

Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)).

Because we find that the trial court's findings are supported by adequate, substantial and credible evidence in the record, we affirm for the reasons set forth in Judge DeLorenzo's thirty-nine page written decision. We add only these comments.

The Division did not need to prove physical abuse and neglect of Marci by defendant to satisfy the first prong of the statute. The Division could "bring an action for the termination of parental rights . . . without first bringing an action under Title [Nine]." N.J. Div. of Youth and Family Servs. v. A.P., 408 N.J. Super. 252, 259 (App. Div. 2009).

That defendant completed one parenting program did not change the fact that he remained without shelter, employment or a plan for how to care for Marci. The Division has proven harm under the first prong of the statute where it can show "the condition or behavior of a parent causes a risk of harm, such as impermanence of the child's home and living conditions, and the parent is unwilling or incapable of obtaining appropriate treatment for that condition . . . ." N.J. Div. of Youth and Family Servs. v. H.R., 431 N.J. Super. 212, 223

(App. Div. 2013). Defendant did not eliminate these harms and provided no reasonable plan for Marci's future.

It was not error for the court to rely on Dr. Dyer's unopposed testimony that defendant lacked the capacity to parent and was unlikely to obtain these skills in the reasonable future. "In a termination of parental rights trial, the evidence often takes the form of expert opinion testimony by psychiatrists, psychologists, and other mental health professionals." N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146 (2018); see Kinsella v. Kinsella, 150 N.J. 276, 318 (1997) (providing that in guardianship cases, trial courts "rely heavily on the expertise of psychologists and other mental health professionals").

We agree there was substantial evidence to support the finding that defendant was unwilling or unable to overcome these harms. The second prong under the statute can be met "if the parent has failed to provide a 'safe and stable home for the child' and a 'delay in permanent placement' will further harm the child." In re Guardianship of K.H.O., 161 N.J. 337, 352 (1999) (quoting N.J.S.A. 30:4C-15.1(a)(2)). The trial court found credible both the caseworker's testimony that services were offered to defendant but he failed to complete any of them except for one parenting program, and Dr. Dyer's testimony that

defendant was not capable of parenting and would not be able to do so in the foreseeable future. Defendant remained without a viable plan for a safe and stable home for Marci.

The record did not support defendant's claim that he was denied "proper visitation" with Marci. The record showed it was defendant who missed visits because his requests for changes in the schedule could not be met or he did not confirm ahead of time that the visit would occur. The Division set up supervised visitation through Care Plus twice a week but defendant did not attend, and this program was cancelled. Visitation then was scheduled at the Division's office; defendant attended in 2016, but in 2017, his visitation became irregular. His visitation stopped after January 2018, apparently because he moved out of state and absented himself. The record did not support the claim there was something improper or inconsistent with the Division's actions.

There was no support for defendant's claim that the Division "neglected" its obligation to help him overcome homelessness and mental health issues. The Division arranged services to address both issues, but defendant did not attend, or attended and did not complete the programs. Transportation assistance was made available. Bus passes were provided. At times, the Division provided

transportation to services and not just for visitations. If defendant had engaged in services, monthly bus passes were available.

The court's finding that termination of defendant's parental rights would not do more harm than good was clearly supported. Dr. Dyer's testimony that Marci was securely bonded with her resource parent and not with defendant, and that disrupting that bond would harm the child, was unrebutted. "The court can rely on expert testimony to make the relevant determination." H.R., 431 N.J. Super. at 226 (citing In re Guardianship of J.C., 129 N.J. 1, 19 (1992)). "When a bond exists between the child and the caretaker parent, and the biological parents cannot correct their poor conduct, the termination of their parental rights will not do more harm than good." Ibid. (citing E.P., 196 N.J. at 108). Although defendant may have made some efforts, he did not overcome his parental deficits. "The child should not 'languish indefinitely in foster care while a birth parent attempts to correct the conditions that resulted in an out-of-home placement.'" Id. at 227 (quoting N.J. Div. of Youth & Family Servs. v. S.F., 392 N.J. Super. 201, 209 (App. Div. 2007)). Rather, the focus needed to be on permanency for the child. See K.H.O., 161 N.J. at 357 (providing that "[i]n all our guardianship and adoption cases, the child's need for permanency and stability emerges as a central factor").

We are satisfied that Judge DeLorenzo appropriately applied the best interest standards under N.J.S.A. 30:4C-15.1(a) in terminating defendant's parental rights.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5548-17T2