# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4164-18T4
      A-4165-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

  Plaintiff-Respondent,

v.

M.L. and L.N.,

  Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.L.,

  a Minor.

_____

Submitted March 31, 2020 – Decided May 18, 2020

Before Judges Accurso, Gilson and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0048-18.

Joseph E. Krakora, Public Defender, attorney for appellant M.L. (Robyn A. Veasey, Deputy Public Defender, of counsel; Christopher Anthony Huling, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant L.N. (Robyn A. Veasey, Deputy Public Defender, of counsel; Carol A. Weil, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Peter Damian Alvino, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (David Ben Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

In these consolidated matters, a mother, M.L. (Melissa), and a father, L.N. (Liam), appeal from a judgment terminating their parental rights to their son, M.L. (Michael), and granting the Division of Child Protection and Permanency (Division) guardianship, with the plan that the child be adopted by a foster parent.[1]  Both parents argue that the Division failed to establish the four prongs of the best interests of the child standard under N.J.S.A. 30:4C-15.1(a).

---

[1]  We use initials and fictitious names to protect privacy interests and the confidentiality of the record.  See R. 1:38-3(d)(12).

Particularly, defendants focus on the requirements of the third prong, arguing that the Division failed to provide appropriate services or consider alternatives to terminating their parental rights. In the alternative, Melissa argues that the family court did not make sufficiently detailed findings as required by Rule 1:7-4(a) and, therefore, the matter should be remanded. Finally, Liam argues that his due process rights and right to counsel were violated because he did not receive notice of the proceedings until approximately seven months after Michael was removed.

The Division and Michael's law guardian urge that we affirm and permit Michael to be adopted. They argue that the family court correctly found all prongs had been established by clear and convincing evidence and that it is in Michael's best interest that he be adopted by the family that has raised and cared for him for over three years. Having reviewed the record in light of the parties' contentions and the applicable law, we affirm substantially for the reasons explained by Judge Magali Francois in her oral opinion read into the record on May 9, 2019.

I.

We discern the facts from the record developed at the two-day guardianship trial held on October 29, 2018 and December 17, 2018. At trial,

3

the Division introduced fifty exhibits and called two witnesses, a DCPP caseworker and Dr. Robert Miller, a psychologist. Liam also testified and introduced one exhibit. Melissa did not testify. Judge Francois detailed the facts and evidence in her opinion. Accordingly, we need only summarize some of the more relevant facts and procedural history.

Melissa has a history of mental health issues and instability. She has been diagnosed with bipolar disorder and has a history of poor impulse control, anger management problems, anxiety, and manic symptoms. In addition, Melissa has cognitive limitations, and her IQ is forty-nine.

Liam has a history of substance abuse. He admitted that for over twenty years he used marijuana daily and crack cocaine on an almost daily basis. He has attended numerous treatment programs but has often failed to complete those programs and has repeatedly relapsed into using illegal substances.

Melissa and Liam also have a history of instability in their relationship and housing situation. In 2013, the Division removed their daughter from their care. Thereafter, when the daughter was nine years old, they surrendered their parental rights to that child, and she was adopted by Melissa's maternal uncle. The daughter is not the subject of this matter. Instead, this appeal involves Michael, who was born in January 2017.

A-1464-18T4

Shortly after Michael's birth, the hospital where Melissa gave birth contacted the Division to report concerns about her untreated mental health issues. That day, the Division initiated an investigation into the care and safety of Michael. A Division worker interviewed Melissa at the hospital. Melissa informed the Division that Liam was Michael's father but that she and Liam had been separated because Liam did not want to be with her after she became pregnant. She also told the worker that she did not know Liam's whereabouts.

Melissa also told the worker she had no concerns about her own mental health but acknowledged that she had received mental health services. Melissa also explained that she planned to stay with her sister and brother-in-law. When the Division tried to assess that arrangement, however, the sister and brother-in-law refused to cooperate with the Division. Melissa then threatened to kill hospital staff and anyone else who tried to take Michael from her.

Concerned about Melissa's mental health, her emotional instability, and Michael's safety, the Division conducted an emergent removal and assumed custody of Michael. Thereafter, the family court approved that removal and placed Michael in the custody of the Division. Because Liam could not be located and Melissa's family had refused to cooperate with the Division, Michael

was placed in an unrelated foster home. Michael has remained in that home for the past three years and the foster mother is committed to adopting Michael.

Following Michael's removal, the Division provided Melissa with various services. Those services focused on her mental health issues. In March 2017, Dr. Miller conducted a psychological evaluation of Melissa. Dr. Miller was already familiar with Melissa because he had evaluated her in 2015 in connection with the situation involving Melissa's daughter. Dr. Miller concluded that Melissa lacked motivation to treat her mental health issues and she did not have a strong support system. Dr. Miller recommended that Melissa only have supervised contact with Michael because she posed a risk to the child's wellbeing.

In June and July 2017, Melissa was hospitalized three times due to psychiatric issues. During those hospitalizations, Melissa denied that she had mental health issues, stated that she was unwilling to take any medications, and exhibited anger management issues.

Thereafter, Dr. Samaris Sostre conducted a psychiatric evaluation of Melissa. Dr. Sostre confirmed Melissa's diagnosis of bipolar disorder. She recommended that Melissa take an anti-psychotic drug, that she be given regular psych evaluations to ensure treatment compliance, and that she be further

evaluated. Dr. Sostre also noted that even if Melissa complied with her mental health treatment, her limited cognitive abilities presented significant problems for her ability to care for Michael.

There is no evidence that Melissa complied with Dr. Sostre's recommendations. Instead, in December 2017, Melissa left New Jersey and began living in North Carolina. While Melissa periodically returned to New Jersey during the guardianship proceedings, she never established a stable living situation that would be appropriate for Michael.

Meanwhile, the Division searched for and finally located Liam in June 2017. In August 2017, a paternity test confirmed that Liam was Michael's father. Thereafter, the Division offered Liam various services, including substance abuse treatment, parenting classes, and parenting time. Following evaluations, Liam was recommended for various substance abuse treatment programs, but was discharged or failed to complete most of those programs. In 2018, Liam repeatedly tested positive for continued use of marijuana and cocaine.

In January and October 2018, Dr. Miller conducted psychological evaluations of Liam. Liam admitted that he had a long history of using marijuana and cocaine and he acknowledged "long periods of homelessness" due to drug addiction. Liam also admitted that he had relapsed after attending

treatment programs. In addition, Liam acknowledged a history of domestic violence with Melissa.

Dr. Miller opined that Liam had made no progress between January and October 2018. In that regard, Dr. Miller testified that Liam's psychological health and substance abuse appeared to have worsened during that time. Accordingly, Dr. Miller opined that Liam demonstrated a lack of insight into his problems and remained at high risk of substance abuse relapse. Dr. Miller concluded that Liam could not provide minimal parenting care for Michael.

Dr. Miller also conducted bonding evaluations, assessing the bond between Liam and Michael and Michael and his foster mother. Dr. Miller concluded that terminating the relationship between Michael and Liam would not result in any immediate or enduring harm since there was a limited bond. By contrast, Dr. Miller opined that Michael had a secure, strong, and positive bond with his foster mother. In that regard, Dr. Miller opined that the foster mother was Michael's psychological parent.

After hearing all the evidence, Judge Francois issued her decision on May 9, 2019. She found the testimony of the Division worker and Dr. Miller to be candid and credible. She found Liam's testimony lacked candor. Judge Francois then made detailed findings of fact and conclusions of law.

Addressing prong one, Judge Francois found that Melissa and Liam posed an immediate and substantial risk of harm to Michael. She noted that Melissa's extensive history of untreated mental health issues combined with her lack of awareness presented a risk to Michael because Melissa was unable to provide a safe and suitable environment for her son. Concerning Liam, Judge Francois found that Liam's failure to attend treatment programs for his substance abuse posed a significant risk to Michael.

With respect to prong two, Judge Francois found that neither Melissa nor Liam was willing to eliminate the risk of harm they posed to Michael. She found that Melissa was unable to acknowledge her mental health issues and that she had consistently refused treatment. Similarly, Liam had refused to address his substance abuse issues and was unable to remain sober.

Turning to prong three, Judge Francois found that the Division had made extensive efforts to provide services to help both parents. Judge Francois also found that the Division had made reasonable efforts to explore family placements but had reasonably ruled out those potential family placements.

Finally, examining prong four, Judge Francois found clear and convincing evidence that termination of Melissa's and Liam's parental rights would not do

more harm than good.  In making those findings, the Judge Francois relied on the unrebutted and credible testimony of Dr. Miller.

## II.

On appeal, Melissa and Liam argue that the trial court erred in terminating their parental rights.  As already noted, both parents challenge each of the four prongs, but take particular exception to Judge Francois' findings on prongs three and four.  Melissa argues that Judge Francois failed to make a finding that no alternative to termination of parental rights existed.  She also challenges Judge Francois' findings regarding the Division's efforts to place Michael with a family member.  Liam also challenges the Division's efforts to find an alternative to termination.  In addition, he contends that his due process rights were violated because the Division did not find him earlier in the process.  We are not persuaded by any of these arguments.

A review of the record establishes that all of Judge Francois' findings concerning the four prongs are supported by substantial, credible evidence.  See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). Moreover, Judge Francois correctly summarized the law and correctly applied the law to her factual findings.  See N.J. Div. of Child Prot. & Permanency v.

P.O., 456 N.J. Super. 399, 407 (App. Div. 2018). Judge Francois appropriately relied on the unrebutted testimony of Dr. Miller, who conducted several evaluations and had a factual basis for his opinions. In that regard, our Supreme Court has noted: "In a termination of parental rights trial, the evidence often takes the form of expert . . . testimony by psychiatrists, psychologists, and other mental health professionals." N.J. Div. of Child Prot. and Permanency v. R.L.M., 236 N.J. 123, 146 (2018) (citing Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 30 (1981)).

Regarding prong three, Melissa and Liam argue that Judge Francois improperly relied on embedded hearsay evidence in the Division's reports regarding the resource mother's willingness to adopt. Initially it should be noted that the evidence was not prejudicial because there is nothing in the record to suggest that the resource mother was not willing to adopt Michael. Indeed, neither Melissa nor Liam offered any evidence to the contrary. Moreover, Melissa's and Liam's counsel did not properly object to the statement at trial. Instead, on the first day of trial, Melissa's counsel objected to embedded hearsay in the expert reports and the Division's contact sheets and requested that the Division's records be authenticated. Liam's counsel joined in that objection and stated that counsel would object to any additional hearsay statements as they

arose. When the Division employee testified that the resource parent wished to adopt, neither Melissa's nor Liam's counsel objected. Had counsel properly raised their hearsay objections, "the Division could have taken steps to satisfy any evidentiary requirements." M.C. III, 201 N.J. at 340 (quoting Brett, 144 N.J. at 503). Consequently, we discern no reversible error.

Melissa also argues that Judge Francois erred by finding prong four of the best interests test without conducting a comparative bonding evaluation between her and Michael. While a bonding evaluation is often helpful and necessary, here it was not. Michael was removed from Melissa several days after his birth. Thereafter, Melissa never made sustained efforts to form a bond with Michael. The Division provided Melissa with regular opportunities to visit with Michael. Melissa, however, missed twenty-two visits with Michael in 2017 and she only attended one visit in 2018. Moreover, in late 2017 she left New Jersey to live in North Carolina. Here, again, the Division offered her assistance in traveling to and from North Carolina to facilitate visitation, but she did not take advantage of those opportunities. Accordingly, Melissa was not prejudiced by the absence of a bonding evaluation because there was no evidence to establish that Melissa had bonded with Michael. Given those facts, the lack of a bonding evaluation

is not a ground for a reversal. See N.J. Div. of Youth & Family Servs. v. B.G.S., 291 N.J. Super. 582, 593 (App. Div. 1996).

Liam also argues for the first time on appeal that his due process rights were violated because the Division failed to promptly locate him and failed to immediately appoint counsel to represent him in the early stages of the proceedings. In that regard, Liam argues that if he were provided more time to seek out substance abuse treatment after Michael was removed, he might have been able to be reunified with Michael. We generally do not consider arguments that were not properly raised before the trial court. See State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

Even if we were to consider these arguments, Liam offers no evidence to suggest that the Division unduly delayed contacting him. Instead, the record establishes that the Division was initially unable to locate Liam and contacted Liam promptly once it had located him. Liam, moreover, was not prejudiced by the Division's delay. He had approximately sixteen months to obtain appropriate substance abuse treatment. Moreover, Liam's arguments regarding the removal proceeding are moot. See N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 264 (App. Div. 2009) (holding that procedural defects in a Title

Nine action are moot when a parent's due process rights are fully protected by a Title Thirty action). Here, Liam was notified of the guardianship trial and was represented by counsel at that trial. See Greenfield v. N.J. Dep't of Corrs., 382 N.J. Super. 254, 257–58 (App. Div. 2006) (citation omitted) ("An issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy.").

To the extent we have not discussed defendants' remaining arguments, it is because they are without sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION