# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2487-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.W.,[1]

     Defendant-Appellant,

and

T.T.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
M.C., a minor.

_____

Submitted November 29, 2021 – Decided December 14, 2021

---

[1] We use initials to protect the privacy of the parties and minor child. R. 1:38-3(d)(15).

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FG-03-0009-21.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong Dao, Designated Counsel, on the briefs.)

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant K.W. (the mother) appeals from an April 16, 2021 order terminating her parental rights to her son, M.C. (the child) born in 2018, and awarding guardianship to the Division of Child Protection and Permanency (the Division). The Division removed the child—due to domestic violence, marijuana use, and parental unfitness—when he was nine months old and initially placed him with F.V. and E.V., and later R.P. Judge Richard L. Hertzberg presided over the trial, entered the judgment, and rendered a thoughtful and comprehensive decision.

2

On appeal, the mother argues:

POINT I

BECAUSE [THE DIVISION] FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT [THE MOTHER]'S PARENTAL RIGHTS TO [THE CHILD] SHOULD BE TERMINATED, THE TRIAL COURT'S ORDER TERMINATING [HER] PARENTAL RIGHTS MUST BE VACATED.

(1) The Trial Court Erred When It Found That [The Mother]'s Parental Relationship Presented A Substantial Risk Of Harm To [The Child].

(2) The Trial Court Was Wrong When It Found That [The Mother] Was Unable Or Unwilling To Mitigate The Harm.

(3) The Trial Court Erred In Finding That The Division Provided Reasonable Services Under Prong Three.

(4) The Trial Court Erred When It Found That Termination Of Parental Rights Was In The Child's Best Interest.

We disagree and affirm substantially for the reasons given by the judge in his oral opinion. We add these remarks.

I.

Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999) (citations omitted). That

3

right is not absolute.  N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 599 (1986).  At times, a parent's interest must yield to the State's obligation to protect children from harm.  See N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992).  The Legislature created a test to determine when it is in the child's best interests to terminate parental rights to effectuate these concerns.  To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires the Division to prove four prongs by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [her] resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternative to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

See A.W., 103 N.J. at 604-11. The four prongs of the test are "not discrete and separate" but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)). Adhering to these standards, the judge concluded—relying on the credible evidence the Division produced—that it was in the child's best interests to terminate the mother's parental rights. The Law Guardian seeks affirmance.

A.

Regarding prong one, the mother argues the Division failed to meet its evidentiary burden. The mother contends the judge erred in holding the Division satisfied prong one "when [he] found that [her] marijuana use created a substantial risk of harm to [the child]." She avers "the evidence shows that [the Division] did not remove [the child] from [her] care due to drug use" and the Division "never substantiated [her] for any abuse or neglect." We disagree.

The first prong of the best interests test requires the Division demonstrate that the "child's safety, health, or development has been or will continue to be

5

endangered by the parental relationship."   N.J.S.A. 30:4C-15.1(a)(1); see K.H.O., 161 N.J. at 352.  The concern is not only with actual harm to the child but also the risk of harm.  In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) (citing A.W., 103 N.J. at 616 n.14).  The focus is not on a single or isolated event, but rather on the effect "of harms arising from the parent-child relationship over time on the child's health and development."  K.H.O., 161 N.J. at 348.  However, a judge does not need to wait "until a child is actually irreparably impaired by parental inattention or neglect" to find child endangerment.  D.M.H., 161 N.J. at 383 (citing A.W., 103 N.J. at 616 n.14).

The Court has explained a parent's withdrawal of nurture and care for an extended period is a harm that endangers the health of a child.  Id. at 379 (citing K.H.O., 161 N.J. at 352-54).  When children "languish in foster care" without a permanent home, their parents' "failure to provide a permanent home" may itself constitute harm.  Id. at 383 (second quotation citing N.J. Div. of Youth & Fams. Servs. v. B.G.S., 291 N.J. Super. 582, 591-93 (App. Div. 1996)).

At the outset, defendant incorrectly argues that the Division never made a finding of abuse or neglect.  The Division is not required to pursue an abuse and neglect finding as a condition for terminating a defendant's parental rights.  N.J. Div. of Youth & Fam. Servs. v. A.P., 408 N.J. Super. 252, 259 (App. Div. 2009).

6

Similarly, the mother's argument drug use did not cause or create a risk of actual harm to the child fails because "that is not the test." N.J. Div. of Youth & Fam. Servs. v. A.G., 344 N.J. Super. 418, 440 (App. Div. 2001) (citing N.J.S.A. 30:4C-15.1(a)). Instead, the appropriate inquiry is "whether the child's safety, health or development will be endangered in the future and whether the parents are or will be able to eliminate the harm." Ibid. We note that on March 14, 2019, a Dodd removal of the child was conducted by the Division.[2]

Here, the judge found that the parental relationship harmed the child by subjecting him to "domestic violence exhibited by . . . [the mother's] impulsive and explosive behaviors." The judge explained the mother's shocking lack of insight as to the ramifications of violence in her life and its "relevance to parenting" has already "put her child in harm's way." The record shows the mother habitually denied domestic violence occurred and that she lied about her denials, as both a victim and a perpetrator. Many of the mother's domestic violence incidents entailed police involvement.

---

[2] "A 'Dodd removal' refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82." N.J. Div. of Youth & Fam. Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

The judge detailed multiple other examples of how the mother presented a substantial risk of harm to the child. She missed at least eight months of drug screen testing and when questioned about it, the mother blamed lack of transportation despite testimony that the Division provided bus passes, and she had access to a car. In addition, the mother repeatedly tested positive for marijuana, was discharged from substance abuse programs, and abandoned the child for a week. Moreover, in June 2019, the mother purportedly threatened to burn down F.V. and E.V.'s home because F.V. was planning to have a birthday party for the child.[3]

The mother's continued volatility and substance use indicate unabated behavior, which may cause "continuing harm by depriving the[] child[] of necessary stability and permanency." N.J. Div. of Youth & Fam. Servs. v. T.S., 417 N.J. Super. 228, 245 (App. Div. 2010) (citation omitted). While the mother made some progress at times, the judge was not required to continue "protracted efforts for reunification," N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004) (citations omitted), because "[c]hildren must

---

[3] The record shows F.V. and E.V. obtained a temporary restraining order against the mother and subsequently requested the child be removed from their care due to concerns over the mother's threats. The child was later placed with another resource parent, R.P.

A-2487-20

not languish indefinitely in foster care while a birth parent attempts to correct the conditions that resulted in an out-of-home placement." N.J. Div. of Youth & Fam. Servs. v. S.F., 392 N.J. Super. 201, 209-10 (App. Div. 2007).

As the judge noted, "after two years in multiple placements, . . . [the] young [child] is at risk for emotional damage were permanency further delayed." The experts who testified failed to see the mother maturing in the foreseeable future. There is no basis for us to disturb the judge's finding that the Division satisfied prong one by clear and convincing evidence.

B.

The second prong of the best interest determination "in many ways, addresses considerations touched on in prong one." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 451 (2012). Evidence supporting the first prong may also support the second prong "as part of the comprehensive basis for determining the best interests of the child." D.M.H., 161 N.J. at 379 (citing K.H.O., 161 N.J. at 348-49). This prong "relates to parental unfitness," K.H.O., 161 N.J. at 352, and "the inquiry centers on whether the parent is able to remove the danger facing the child." F.M., 211 N.J. at 451 (citing K.H.O., 161 N.J. at 352).

The Division can satisfy this inquiry by showing the parent or parents cannot provide a safe and stable home and that the child or children will suffer substantially from a lack of stability and permanent placement. N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 281 (2007) (citing K.H.O., 161 N.J. at 363). Because the Legislature placed "limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child[ren][,] [t]he emphasis has shifted from protracted efforts for reunification with [the] birth parent[s] to an expeditious, permanent placement to promote the child's well-being." C.S., 367 N.J. Super. at 111 (citing N.J.S.A. 30:4C-11.1; D.M.H., 161 N.J. at 385; K.H.O., 161 N.J. at 357-59).

The mother asserts the judge "erroneously found that [she] did not comply with the recommended services and denied her problems." She further contends the judge's conclusion assumes facts and evidence not significantly supported by the record and failed to consider facts favorable to her. We are unpersuaded. The record clearly shows the mother was non-compliant with services both before and after the child's removal despite the Division's efforts to stabilize the family. Programs such as Oaks, Solstice, and SODAT repeatedly discharged the mother for her resistance to help and refusal to participate in services. And, the mother categorically refused to accept and address the domestic violence

10

recurring in her life with professionals and Division offered services. Instead, the mother gave excuses for each contact sheet and police report dealing with a domestic violence issue, claiming it was inaccurate or a misunderstanding.

When analyzing the second prong, a judge must also consider the harm the child suffers by delaying permanent placement and the potential future harm that would arise from severing a bond with a resource parent. M.M., 189 N.J. at 283 (citing N.J.S.A. 30:4C-15.1(a)(2)); see, e.g., N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 561 (2014). While the mother made some improvement, it was insufficient progress toward familial stability because of her inconsistent treatment and lack of motivation.

As we have stated, "[k]eeping the child in limbo, hoping for some long term unification plan, would be a misapplication of the law." A.G., 344 N.J. Super. at 438 (citing In re P.S., 315 N.J. Super. 91, 121 (App. Div. 1998)). Here, the judge concluded the mother was not likely to become a viable parent in the foreseeable future because she is unamenable to change. Based on the evidence, the judge found the child "is likely to suffer severe emotional harm were that bond [with the resource parent] severed. The same is not the case for [the mother]. The resource parent is capable of mitigating disruption to [the child]

11

while [the mother] lacks that capacity." We therefore find no merit to the mother's contentions as to prong two.

C.

The third prong requires evidence that "[t]he [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). "Reasonable efforts may include consultation with the parent, developing a plan for reunification, providing services essential to the realization of the reunification plan, informing the family of the child's progress, and facilitating visitation." M.M., 189 N.J. at 281 (internal quotation marks omitted) (citation omitted).

The mother argues the Division failed to show by clear and convincing evidence that it provided reasonable services with the goal toward reunification and "simply ignored [her] request for a new therap[ist]." "[A]n evaluation of the efforts undertaken by [the Division] to reunite a particular family must be done on an individualized basis." D.M.H., 161 N.J. at 390 (citing L.A.S., 134 N.J. at 139). The evaluating court must also consider "the parent's active participation in the reunification effort." Ibid. (citations omitted). In any

situation, "[t]he services provided to meet the child's need for permanency and the parent's right to reunification must be 'coordinated' and must have a 'realistic potential' to succeed." N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 488 (App. Div. 2012) (quoting N.J. Div. of Youth & Fam. Servs. v. J.Y., 352 N.J. Super. 245, 267 n.10 (App. Div. 2002)).

This requires the Division to "encourage, foster and maintain the parent-child bond, promote and assist visitation, inform the parent of the child's progress in foster care and inform the parent of the appropriate measures he or she should pursue . . . to . . . strengthen their relationship." R.G., 217 N.J. at 557 (alterations in original) (quoting D.M.H., 161 N.J. at 390). What constitutes reasonable efforts varies with the circumstances of each case. D.M.H., 161 N.J. at 390-91. However, the Division is not required to be successful in their efforts to provide services, D.M.H, 161 N.J. at 393, or to provide services at all when it is not in the children's best interests. See L.J.D., 428 N.J. Super. at 488.

In the matter under review, the judge credited the Division's efforts to provide the mother with services and referrals for psychological and bonding evaluations, supervised visitation with the child, substance abuse assessments and treatment, parenting skills classes, domestic violence counseling, batterer's intervention, and transportation. The mother claims she had "been asking for a

13

new therapist for over a year" due to lack of progress with her treating therapist. But the record reflects her therapist's concerns about continuing therapy because of the mother's lack of commitment to progress and ignoring her therapist's referral to a psychiatrist. We are not convinced that the Division's failure to assign the mother a new therapist or psychiatrist was in derogation of prong three because the mother's history is replete with evidence of her defiant and unmotivated engagement to the reunification process. We therefore find no merit to the mother's contentions regarding prong three.

D.

The fourth prong of N.J.S.A. 30:4C-15.1(a)(4) serves as "a 'fail safe' inquiry guarding against an inappropriate or premature termination of parental rights." F.M., 211 N.J. at 453 (citing N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 609 (2007)).

> [T]he fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties. The question to be addressed under that prong is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents.
>
> [K.H.O., 161 N.J. at 355.]

"The crux of the fourth statutory subpart is the child's need for a permanent and stable home, along with a defined parent-child relationship." N.J. Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 226 (App. Div. 2013) (citing C.S., 367 N.J. Super. at 119). "If one thing is clear, it is that the child deeply needs association with a nurturing adult. Since it seems generally agreed that permanence in itself is an important part of that nurture, a court must carefully weigh that aspect of the child's life." A.W., 103 N.J. at 610 (citation omitted). Therefore, "to satisfy the fourth prong, the State should offer testimony of a 'well qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation' of the child's relationship with both the natural parents and the foster parents." M.M., 189 N.J. at 281 (quoting J.C., 129 N.J. at 19).

"It has been 'suggested that [a] decision to terminate parental rights should not simply extinguish an unsuccessful parent-child relationship without making provision for . . . a more promising relationship . . . [in] the child's future.'" N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 108 (2008) (quoting A.W., 103 N.J. at 610) (alterations in original). "[C]ourts have recognized that terminating parental rights without any compensating benefit, such as adoption, may do great harm to a child." Id. at 109 (citing A.W., 103 N.J. at 610-11).

The mother challenges the judge's prong four findings arguing termination of her parental rights will do more harm than good. She contends the judge ignored the bond and attachment she had with the child. Having thoroughly reviewed the record under our standard of review and the applicable law, we conclude the mother's arguments as to prong four lack merit.

The judge weighed the expert testimony presented by the Division and the Law Guardian. Both experts had the opportunity to conduct bonding evaluations between the mother and the child, as well as between the child and his resource mother. The experts opined the child has a "strong" and "positive" bond with both the mother and the resource mother; however, the experts concurred that the child has an insecure attachment to the mother but a secure bond with his resource mother. Moreover, the experts testified that the child's resource mother would more than likely mitigate any harm he would endure from severing his relationship with his mother, whereas the mother would not. The judge emphasized the mother "cannot be trusted to control herself around [the child], nor can she be trusted to keep him away from dangerous persons who might cause physical or emotional harm. . . . An adoption by the resource parent is clearly in [the child's] best interest." The record supports that finding under prong four.

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support the decision to terminate parental rights." F.M., 211 N.J. at 448-49 (citing E.P., 196 N.J. at 104). "We invest the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." Id. at 427. Although our scope of review is expanded when the focus is on "'the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' . . . . even in those circumstances we will accord deference unless the trial court's findings 'went so wide of the mark that a mistake must have been made.'" M.M., 189 N.J. at 279 (first quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188-89 (App. Div. 1993); then quoting Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

Here, the record contains substantial and credible evidence to support the decision to terminate the mother's parental rights. The judge found the mother's testimony was "unreliable," "argumentative," and that she was evasive and

17                                                                    A-2487-20

contradictory. He concluded that the mother could not "provide an environment for [the child] where he would not be at risk." The mother's instability and violent tendencies made her a "ticking time bomb," and a grave threat to the child. We have no reason to second guess those or any other findings.

We are aware that on July 2, 2021, the Legislature enacted L. 2021 c. 154, amending N.J.S.A. 30:4C-15.1(a) pertaining to the standards for terminating parental rights. Specifically, the Legislature amended N.J.S.A. 30:4C-15.1(a)(2), to exclude from consideration the harm to a child caused from being removed from resource parents as a factor in a termination of parental rights case. N.J.S.A. 30:4C-15.1(a) now reads as follows:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

We are satisfied the Division has proven all four prongs of the best interests standard under both the old and amended version of N.J.S.A. 30:4C-15.1(a).

To the extent we have not addressed any other argument, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2487-20