# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3727-17T2
A-3728-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.L.C. and T.P.,

     Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.P.,

     a Minor.

_____

Submitted April 29, 2019 – Decided May 9, 2019

Before Judges Sabatino, Mitterhoff and Susswein.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0039-17.

Joseph E. Krakora, Public Defender, attorney for appellant J.L.C. (Robyn A. Veasey, Deputy Public Defender, of counsel; Laura Orriols, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant T.P. (Daniel A. Di Lella, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Kimberly S. Dinenberg, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendants J.L.C. ("the mother") and T.P. ("the father") appeal from a final judgment of guardianship terminating their parental rights as to their son A.P. ("Arnold").[1]  We affirm.

Arnold was born in April 2017.  He was removed from his parents' care on an emergency basis by the Division of Child Protection and Permanency ("the Division") on the date of his post-birth discharge from the hospital.  Defendants have several other children, none of whom are in their care.

---

[1]  We use initials and pseudonyms to protect the privacy of the child.  See R. 1:38-3(d)(12).

The mother has longstanding and persisting addiction problems with heroin and other drugs. She admitted using heroin during her pregnancy and tested positive for drugs at Arnold's birth, as did Arnold. The father has several prior criminal convictions, including one for criminal sexual contact with a minor, which requires him to register under Megan's Law as a sex offender.

According to the Division's trial proofs, Arnold has done well with his resource parents and has been in the process of forming a secure bond with them. Although the defendants suggested alternative placements for Arnold with their respective parents (the paternal and maternal grandparents), the trial court found that neither of those grandparents could realistically take care of Arnold due to their own circumstances. All other relatives suggested by defendants as possible caretakers were not viable options, as the trial court noted.

The Division's testifying expert, Dr. Alan Lee, a clinical psychologist, performed psychological evaluations of defendants and bonding evaluations with Arnold. Based upon his review, Dr. Lee recommended that adoption by the resource parents was appropriate. The trial judge specifically found in his written opinion that Dr. Lee's testimony was "convincing, reliable and credible." In addition, the judge found the trial testimony of the Division's caseworker, Leonard Becker, was likewise credible.

A-3727-17T2

Although the judge found the testimony of the mother to be "reliable," the judge noted that she conceded that she has a long-term unresolved addiction to opiates. The mother further admitted that she had hid her children from the Division by leaving them alone in a hotel, and had pled guilty to criminal charges associated with that incident.

Defendants did not present any competing expert witnesses at trial. The Law Guardian for Arnold joined with the Division in advocating that defendants' parental rights be terminated.

After considering the proofs, Judge W. Todd Miller issued a comprehensive written opinion on April 2, 2018, concluding the Division had established by clear and convincing evidence all four prongs of the statutory criteria for termination of parental rights under N.J.S.A. 30:4C-15.1(a).

Both parents now appeal. They argue that the trial proofs were insufficient to meet all four prongs of the statutory termination criteria. In addition, the mother raises various procedural arguments. Among other things, she contends that her due process rights were violated when the Division removed Arnold from the parents' care on an emergency basis shortly after his birth. The mother further argues that the expert testimony of Dr. Lee was "manifestly biased" and that he based his opinions upon outdated mental health

4

standards. She contends the court should have postponed the trial to afford her more time to obtain an expert witness.

In reviewing defendants' arguments to set aside the final judgment, we are mindful that the termination of a parent's rights to his or her children is of constitutional magnitude. See In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, we also recognize that our scope of review of a Family Part judge's decision in this fact-sensitive guardianship context is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "Appellate courts must defer to a trial judge's findings of fact if supported by adequate, substantial, and credible evidence in the record." Ibid. We must also defer to the trial court's credibility determinations, and to the Family Part's special expertise in the field of domestic relations. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552-53 (2014). Only the trial court's interpretation of the law and legal findings are reviewed pursuant to a de novo standard. Id. at 552.

Having applied these standards to the trial record, we affirm the trial court's decision as to both defendants. We do so substantially for the sound reasons expressed in Judge Miller's comprehensive forty-two-page opinion. We add only a few comments.

The Division's proofs were more than ample to support the trial judge's determinations on all four statutory factors. The parents have long and troublesome histories of psychological and behavioral problems. Despite receiving a range of services, the mother continued to abuse drugs. She remains incapable of raising her children, including Arnold, who was born with drugs in his system. The father also was offered reasonable services, but was resistant to them and generally non-cooperative. At one point, he even threatened to punch a caseworker in the face.

According to the State's expert testimony, the prognosis for either parent becoming capable of reunification with Arnold in the near future was poor. In the meantime, Arnold has been cared for capably by his resource parents for nearly all of his life.

We reject the mother's claim that her due process rights were transgressed by the removal of Arnold upon his birth. The Division did not misapply its statutory authority under N.J.S.A. 9:6-8.29(a) to take custody of Arnold on an emergency basis after he was born, with drugs in his system, to a mother who was a heroin addict, and with a father with a criminal record who appeared to have done nothing to protect his children from the mother's harmful irresponsible behavior. Given the urgent circumstances, it was not vital for the

Division to submit an investigation summary before proceeding with the removal.

Additionally, we discern no error in the Division obtaining an order of custody under Title 30 without first bringing an abuse or neglect complaint under Title 9, a procedure we have held to be permissible to protect a child's best interests. See N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 260 (App. Div. 2009).

There also is no merit to the mother's contention that she was deprived of appropriate and competent counsel at the pretrial hearings in the present "FG" guardianship matter. Despite the mother's absence, counsel who had been appointed for her in the "FN" abuse or neglect matter cross-examined the Division's caseworker and actively participated in the "FG" hearings.

Equally without merit is the mother's claim that the trial court should have rejected Dr. Lee's testimony because he did not refer to the most current version of the Diagnostic and Statistical Manual of Mental Disorders, DSM-V, and instead referred to the publication's earlier version, DSM-IV. Dr. Lee reasonably explained that, like many practitioners in his field, he used the DSM-IV because there has been significant professional controversy over the DSM-V.

We detect no abuse of discretion by the trial court in admitting and relying upon Dr. Lee's expert opinions. See State v. Kuropchak, 221 N.J. 368, 385 (2015) (reiterating the discretion reposed in trial judges on such evidentiary matters); City of Long Branch v. Liu, 203 N.J. 464, 491 (2010) (noting the factfinder's role in assessing the weight and credibility to give to expert testimony).

Lastly, we are unpersuaded the trial court abused its discretion over scheduling matters when it denied the mother an additional adjournment of the guardianship trial to attempt to obtain an expert. The court had already afforded the mother and her counsel more than sufficient time to obtain such an expert. Moreover, delaying the proceedings further would impinge upon the child's important interests in attaining permanency. N.J. Div. of Child Prot. & Permanency v. R.L.M., 236 N.J. 123, 146-47 (2018).

To the extent we have not commented on any remaining points raised on appeal by defendants, they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION